**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM DIVISION**

**CASE NO.: 9:25-cv-81443-EA**

PATRICIA CAVALLARO-KEARINS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

MODERNIZING MEDICINE, INC.,

Defendant.

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMIMNARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 23, Plaintiff[1] files this Unopposed Motion for Preliminary Approval of Class Action Settlement.[2] The Motion is supported by the Joint Declaration of Interim Co-Lead Class Counsel ("Joint Decl."), attached as ***Exhibit B***.

## I. INTRODUCTION

Defendant is a medical software firm based in Boca Raton, Florida. In the regular course of its business, Defendant maintains certain Private Information associated with Defendant's Customers' patients, including their full names, addresses, dates of birth, phone numbers, email addresses, Social Security numbers, health insurance information, medical information (such as medical record numbers, patient account numbers, dates of service, provider and practice names,

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as ***Exhibit A***.

[2] Defendant fully supports Preliminary Approval of the Settlement and does not oppose Plaintiff's Motion. By not opposing Plaintiff's Motion, Defendant does not concede the factual basis for any claim and denies liability. The description of the proceedings, as well as legal and factual arguments, are Plaintiff's, and Defendant disagrees with some of those characterizations and descriptions.

billing/diagnostic codes, prescription/medication information, and diagnosis and treatment information). Agreement ¶¶ 1, 51.

On July 21, 2025, Defendant detected suspicious activity on two computer servers that were used to facilitate the conversion of limited data from retiring electronic health record ("EHR") platforms to Defendant's current EHR platform. *Id.* ¶ 2. It subsequently determined an unauthorized actor had accessed and acquired information stored on those two servers between July 9, 2025, and July 10, 2025. *Id.* On or about October 17, 2025, after receiving delegation and instructions from Defendant's Customers, Defendant began sending notice letters to impacted individuals advising them their Private Information may have been impacted in the Data Incident. *Id.* ¶ 3. After the Action was filed, to avoid the risk and expense of litigation, the Parties agreed to a classwide Settlement that provides significant relief for the Settlement Class, including a non-reversionary all cash $2,999,750.00 Settlement Fund.

The Court should find the Settlement is within the range of reasonableness necessary to grant Preliminary Approval under Rule 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiff as Class Representative; (iv) appointing Jeff Ostrow of Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Mariya Weekes of Milberg, PLLC, and Raina Borrelli of Strauss Borrelli PLLC as Class Counsel for the Settlement Class; (v) approving the form of the Notices and the Notice Program; (vi) approving the Claim Form and the Claim Process; (vii) appointing Simpluris, Inc. as the Settlement Administrator; (viii) establishing procedures and deadlines for the Settlement Class Members to opt-out of or object to the Settlement; and (ix) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## II. PROCEDURAL HISTORY

On November 19, 2025, Plaintiff Cavallaro-Kearins filed a class action lawsuit seeking to represent a putative class of individuals whose Private Information was involved in the Data Incident and alleging claims for negligence, breach of implied contact, invasion of privacy, unjust enrichment, and breach of fiduciary duty. ECF No. 1; Agreement ¶ 4. Defendant waived service of process on December 19, 2025. ECF No. 5; Agreement ¶ 5.

The Parties decided to conserve resources and explore resolution of the entire Action. Joint Decl. ¶ 6. The Parties set a mediation in Miami, Florida with experienced class action mediator Bruce Friedman, Esq. with JAMS for April 2, 2026. *Id.* On February 5, 2026, the Parties filed a Joint Motion to Stay Proceedings Pending Mediation, which the Court granted on February 18, 2026. ECF Nos. 8, 11.

Before mediation, Plaintiff requested and Defendant produced informal discovery requests related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident and the categories of Private Information involved. Likewise, Defendant requested and Plaintiff produced informal discovery related to her claims, including, but not limited to, information about the injuries alleged in her Complaint. The Parties exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, and settlement. Agreement ¶ 8; Joint Decl. ¶ 7.

After a full day of negotiations, the Parties agreed to the material terms of the Settlement to resolve all claims on a classwide basis. Agreement ¶ 9*,* Joint Decl. ¶ 9. The Parties filed a Notice of Settlement and Joint Motion to Stay on April 3, 2026. ECF No. 12. The Court stayed the case on April 6, 2026. ECF No. 13. Over the next seven weeks, the Parties worked diligently to finalize the terms of the Agreement, Notices, Claim Form, and proposed orders. Joint Decl. ¶ 10. The

Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id.* ¶ 13. The Agreement was executed on May 22, 2026. *Id.* ¶ 10.

## III. MATERIAL SETTLEMENT TERMS

**A. Settlement Class** – Plaintiff seeks Preliminary Approval of the following Settlement Class:

> [A]ll living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident.

The Settlement Class excludes: (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any member of the Settlement Class that timely and validly opt-outs of the Settlement. Agreement ¶ 61.

**B. Settlement Fund** – The Settlement provides for a non-reversionary $2,999,750.00 all cash Settlement Fund. *Id.* ¶ 64. Defendant will fully fund the Settlement Fund within 30 days of Preliminary Approval. *Id.* ¶ 67. It will be used to pay: (1) all Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees and costs awarded by the Court. *Id.* ¶ 68.

**C. Settlement Class Member Benefits** – When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. *Id.* ¶ 71. Settlement Class Members may also elect to receive Medical Monitoring in accordance with the terms of the Settlement Agreement. *Id.* All Cash Payments will be subject to a *pro rata* increase or decrease, depending on the value of all Valid Claims received. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Settlement Class Member Benefit. *Id.*

***Cash Payments*** – Settlement Class Members who elect Cash Payment A may receive up to $5,000.00 for reasonable documented losses related to the Data Incident. *Id.* ¶ 71.a. Alternatively, they may elect to Cash Payment B in the estimated amount of $75.00. *Id.* ¶ 71.b.

***Medical Data Monitoring*** – In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that will include two years of CyEx's Medical Shield and: (i) real time monitoring of the credit file with one credit bureau; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freezing assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 71.c.

**D. Notice Program** – The Parties have agreed on a comprehensive Notice Program, which includes a Postcard Notice, Long Form Notice, Settlement Website, and Settlement telephone line for frequently asked questions. *Id.* § VIII and Ex. 1-2.

No later than ten days after Preliminary Approval, Defendant will provide the Settlement Administrator with the Class List. *Id.* ¶ 76. Thereafter, within 30 days following Preliminary Approval, the Settlement Administrator shall commence the Notice Program provided herein, using the Court-approved Postcard Notice and Long Form Notice. *Id.* ¶ 77.

The Settlement Website will establish as a means for Settlement Class Members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to the Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees and Costs, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. *Id.* ¶ 81. The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement

Class Members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class Members who call with or otherwise communicate such inquiries. *Id.* ¶ 75.e.

The Postcard Notice will include, among other information (a) a description of the material Settlement terms; (b) how to submit a Claim Form; (c) the Claim Form Deadline; (d) the Opt-Out Deadline to opt-out of the Settlement; (e) the Objection Deadline to object to the Settlement and/or Application for Attorneys' Fees and Costs; (f) the Final Approval Hearing date; and (g) the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. *Id.* ¶ 78. The Long Form Notice will also include procedures to opt-out of the Settlement Class or to object to the Settlement and/or Application for Attorneys' Fees and Costs, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice for those instructions. *Id.*

The Settlement Administrator shall perform reasonable address traces for those Postcard Notices returned as undeliverable. *Id.* ¶ 79. If better addresses are found, the Settlement Administrator will remail the Postcard Notice. *Id.* The Notice Program shall be completed no later than 45 days before the initial scheduled Final Approval Hearing. *Id.* ¶ 80.

**E. Claim Process and Disbursement of Cash Payments** – To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by the Claim Form Deadline. *Id.* § IX. The Claim Form is Exhibit 3 to the Agreement. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address on the Claim Form, who will review them to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled. *Id.* ¶¶ 87-88. Procedures are included to identify and reject duplicate and prevent fraud and abuse in the Claim Process, as well as to send a Notice of

Deficiency to correct missing or inaccurate information on Claim Forms. *Id.* ¶¶ 89-90. The Settlement Administrator will distribute the Settlement Class Member Benefits to those who submitted Valid Claims no later than 45 days after the Effective Date. *Id*. ¶ 96. Cash Payments will be made by electronica payment, and an email will be sent to Settlement Class Members electing Medical Monitoring with activation instructions. *Id*. ¶¶ 97, 99.

**F. Disposition of Residual Funds** – If there are funds remaining in the Settlement Fund 180 days following the date Settlement Class Members are first sent electronic payments, any residual shall be distributed to a *cy pres* recipient approved by the Court. *Id*. ¶ 104. The Parties agree to propose the Legal Aid Society of Palm Beach County (https://legalaidpbc.org). *Id*.

**G. Settlement Administrator** – The proposed Settlement Administrator, Simpluris, Inc., is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. Joint Decl. ¶ 28. The Settlement Administrator shall fulfill the requirements of the Preliminary Approval Order and Agreement, including the Notice Program, Claim Process, Settlement Fund, and Settlement Class Member Benefits. Agreement § VII. Class Counsel shall oversee the Settlement Administrator. *Id.* ¶ 73.

**H. Opt-Out and Objection Procedures** – Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class Members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the initial scheduled Final Approval Hearing. *Id.* ¶ 48. By that Opt-Out Deadline, they must mail an opt-out request to the Settlement Administrator that includes their name, address, telephone number, and email address (if any), and a statement indicating a request to opt-out of the Settlement Class. *Id.* ¶ 82. Any Settlement Class Member who does not timely request to opt-out shall be bound by the Agreement's terms even if that Settlement Class Member does not submit a Claim Form. *Id.*

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees and Costs. *Id.* ¶¶ 83-84. Objections must be sent to the Clerk of the Court, and mailed to Class Counsel, Defendants' Counsel, and the Settlement Administrator. *Id.* ¶ 83.

**I. Releases –** Plaintiff and Settlement Class Members who do not timely and validly opt-out of the Settlement will be bound by the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *Id.* § XIII. The Released Claims are narrowly tailored and are only claims arising out of or relating to the Data Incident. Joint Decl. ¶ 14.

**J. Attorneys' Fees and Costs –** The amount of any attorneys' fees and costs shall be determined by the Court. Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. Agreement ¶ 102. The Application for Attorneys' Fees and Costs will be filed as part of the Motion for Final Approval filed no less than 45 days before the initial scheduled Final Approval Hearing. *Id.* ¶ 100. The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 103. The Notices will advise the Settlement Class of the amount of attorneys' fees that Class Counsel intends to seek.

## V. ARGUMENT

### A. The Settlement Class Should Be Certified.

The Supreme Court has recognized the benefits of a proposed settlement of a class action can be realized only through settlement class certification. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable. *Prado–Steiman ex rel.*

*Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Plaintiff must satisfy all Fed. R. Civ. P. 23(a) requirements (numerosity, commonality, typicality, and adequacy), and one of the Fed. R. Civ. P. 23(b) requirements. Plaintiff seeks certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the Action. These requirements are met for settlement purposes.

**1. Standing** – A plaintiff must demonstrate Article III standing to pursue the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman*, 221 F.3d at 1279). Article III standing need not be proved with evidentiary support at the settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021).

"Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach." *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *6 (S.D. Fla. Feb. 11, 2025) (citing *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022)). *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-1208 (S.D. Fla. 2022), extensively addressed standing in data breach class actions, and subsequently relied on that analysis when preliminarily approving a class settlement in that case.

*In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 n.2 (S.D. Fla. Apr. 10, 2024) (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023)). *See also In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 4547212, at *3-7 ((S.D. Fla. Feb. 11, 2025) (denying motion to dismiss for lack of standing).

Here, Plaintiff has standing because, like the Plaintiffs in *Fortra*, *Mednax*, and *Desue*, her Private Information was allegedly accessed and acquired by cybercriminals. Because Plaintiff and Settlement Class Members had their Private Information impacted in the Data Incident, they all suffered an injury in fact, that is fairly traceable to the Data Incident, and which could be redressed through an appropriate damages award if this case was litigated through trial. As in *Forta*, *Mednax*, and *Desue*, the pursuit of damages and injunctive relief based on actual misuse and actual access to the Settlement Class' data is a plausible injury in fact – the substantial risk of future harm from identity theft and emotional injury; the diminution in the value of their Private Information; and the loss of privacy. *Mednax*, 603 F. Supp. 3d at 1202-05; *Fortra*, 2025 WL 457896, at *7.

The causal connection between the Data Incident and the Settlement Class' injuries, or traceability to the Data Incident, exists for Article III standing. The injuries must be "fairly traceable" to Defendant's actions, but that does not mean Plaintiff is required to show proximate cause because harm flowing indirectly from the Data Incident are sufficient for standing. *Fortra*, 2024 WL 4547212, at *6-7; *Mednax*, 603 F. Supp. 3d at 1205. Defendant's actions need not be the very last step in causation chain. *Id.* Defendant's alleged failure to protect the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiff's allegations of economic losses, lost time, and emotional distress, and Settlement Class Members are at substantial risk of future identity theft incidents. *See Fortra*, 2025 WL 2675178, at *9;

*Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206. The Data Incident need not have provided all information necessary to inflict those harms; it is enough the Data Incident could assist give identity thieves in perpetrating them. *See Fortra*, 2025 WL 2675178, at *9; *Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206.

**2. Ascertainability –** Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "adequately defined and clearly ascertainable." *Id.* (citation omitted). The class definition and ascertainability typically involve one inquiry because, without an adequate definition for a proposed class, a district court cannot ascertain who belongs in the class. *Id.* For class certification, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. An adequately defined class thus should be defined by objective criteria with its members identifiable. *Id.* Here, the Settlement Class is adequately defined and clearly ascertainable because the definition contains sufficient objective criteria to allow an individual to determine whether he or she is a Settlement Class Member—i.e., whether they were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident. Agreement. ¶ 61.

**3. Rule 23(a) –** Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Each requirement is satisfied here.

***Numerosity (Fed. R. Civ. P. 23(a)(1)) –*** Class sizes exceeding 40 are typically adequate for numerosity. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Fortra*, 2025

WL 2675178, at *5; *Fortra*, 2025 WL 457896, at *4; *Mednax*, 2024 WL 1554329, at *4. Here, the joinder of approximately 386,423 Settlement Class Members would certainly be impracticable, and thus numerosity is satisfied. Joint Decl. ¶ 3.

***Commonality (Fed. R. Civ. P. 23(a)(2))*** – This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g.*, *Fortra*, 2025 WL 2675178, at *5-6; *Fortra*, 2025 WL 457896, at *4; *Mednax*, 2024 WL 1554329, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *Desue*, 2022 WL 17477004, at *4; *see also Equifax*, 999 F.3d at 1274-75, 1277 (affirming certification of class, including finding of commonality). Here, as in the cases cited above, the claims turn on whether Defendant's security environment was adequate to protect the Settlement Class' Private Information. Joint Decl. ¶ 27. That inquiry can be fairly resolved because it revolves around evidence that does not vary between members—at least for purposes of settlement—for all Settlement Class Members at once. Indeed, the Settlement Class Members each had their Private Information impacted in the Data Incident. *See Fortra*, 2025 WL 457896, at *4.

***Typicality (Fed. R. Civ. P. 23(a)(3))*** – The commonality and typicality analyses often overlap, as they are both focused on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification. *Mednax*, 2024 WL 1554329, at 4. "Here, the typicality requirement is satisfied because Plaintiffs' interests are aligned with the Settlement Class in that they all received a notice

letter informing them their Private Information may have been compromised as a result of the Data Incident and was therefore impacted by the same purportedly inadequate data security that allegedly harmed the rest of the Settlement Class" *Id.* Their claims are based on the same legal theories and underlying event. *Fortra*, 2025 WL 457896, at *5.

***Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))*** **–** "[T]he representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Mednax*, 2024 WL 1554329, at *5. "The determinative factor 'is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class.'" *Id.* (citation omitted); *Fortra*, 2025 WL 457896, at *5. "Here, the Class Representative has no conflicts with the Settlement Class and has demonstrated her adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *Mednax*, 2024 WL 1554329, at *5; Joint Decl. ¶ 27.

Like all Settlement Class Members, Plaintiff has claims against Defendant arising from the Data Incident that allegedly impacted her Private Information. Joint Decl. ¶ 26. Plaintiff was similarly injured by Defendant's allegedly wrongful acts. *Id.* Proof of Plaintiff's claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. *Id.* Thus, Plaintiff and the Settlement Class she seeks to represent has the same interests in recovering damages. *Id.* Further, Plaintiff has also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing the Complaint, promptly

providing documents and information to Class counsel, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. *Id*.

As for Class Counsel, they are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context. *Id*. ¶ 15. Like counsel in *Mednax* and *Fortra*, "Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators." *Mednax*, 2024 WL 1554329, at *5; *Fortra*, 2025 WL 457896, at *5. Class Counsel have litigated this Action, including evaluating the claims, preparing a comprehensive pleading, serving informal discovery, consulting with data security and damages experts, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. Joint Decl. ¶ 16. They then negotiated and drafted the Agreement, Notices, and Claim Form. *Id.* The Parties negotiated the form of the Notices and Claim Form with the Settlement Administrator's help.

Accordingly, Plaintiff and Class Counsel will adequately represent the Settlement Class.

**4. Rule 23(b)(3) –** Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

***Predominance* –** "The predominance inquiry looks at 'the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any

settlement.'" *Mednax*, 2024 WL 1554329, at *5 (quoting *Amchem*, 521 U.S. at 623).

> "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig.*, No. 2599, 2023 WL 4925368, at *6 (S.D. Fla. June 20, 2023). Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 311–16 (N.D. Cal. 2018). The focus on a Defendants' security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Id.* at 312.

*Id.* As in *Mednax* and *Fortra*, all Settlement Class Members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person. "Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Fortra*, 2025 WL 2675178, at *7 (citing *Fortra*, 2025 WL 457896, at *6 (quoting *Mednax*, 2024 WL 1554329, at *5)). Thus, predominance is readily satisfied.

***Superiority* -** "Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted." *Id.* To satisfy Rule 23(b)(3) superiority, Plaintiff must show "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "'The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs.'" *See Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 2025 WL 457896, at *6, and *Mednax*, 2024 WL 1554329, at *5). Here, as in *Mednax*:

> [A]djudicating individual actions would be impractical. The amount in dispute for each Settlement Class member is too small, the technical issues too complex, and the expert testimony and document review too costly. *Id.* Further, individual claim

> prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.

2024 WL 1554329, at *5. Accordingly, a class action is the superior method of adjudicating this case. *See Fortra*, 2025 WL 457896, at *6; *see also* Joint Decl. ¶ 30.

**B. The Settlement Should be Preliminarily Approved.**

After determining settlement class certification is likely, the Court must determine whether the Settlement is worthy of Preliminary Approval and providing Notice to the Settlement Class. The question is whether the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the "*Bennett*" factors. *Mednax*, 2024 WL 1554329, at *6.

At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, No. 8:20-cv-105, 2021 WL 2954741, at *7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed. Supp. 2020)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Courts have substantial discretion in approving a settlement agreement, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness*, see Manual for Compl. Lit.*, Third, § 30.42 (West 1995).

The Rule 23(e)(2) factors are:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arms' length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants Preliminary Approval under the factors set forth in Rule 23(e)(2) and *Bennett*.[3]

***Adequacy of Representation (Rule 23(e)(2)(A))*** – This first factor "weighs heavily in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-MD-03090, 2025 WL 2675178, at *9 (S.D. Fla. Sept. 17, 2025) (citing *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *8 (S.D. Fla. Feb. 11, 2025), and *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024)). While *Mednax* proceeded to a later stage than here before the parties agreed to settle, Class Counsel thoroughly investigated and analyzed Plaintiff's claims. Class Counsel also consulted and retained liability and damage experts enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *See* Joint Decl. ¶ 16; *see also Mednax*, 2024 WL 1554329 at *6. They used informal discovery to learn how the Data Incident occurred and the Private Information impacted, before attending a full-day

[3] *Bennett* factor 5 is best evaluated after the Settlement Class is given Notice of the Settlement.

mediation session. Joint Decl. ¶¶ 6-8. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *Id.* ¶¶ 11-12, 16. Also, the Class Representative has demonstrated her adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the Complaint; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. *Id.* ¶ 27. Plaintiff's respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 28. Plaintiff has the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id.*

***The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and Bennett Factor 6)*** – The Settlement was reached without collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, with the assistance of the mediator, Mr. Friedman. *Id.* ¶¶ 6-8, 13. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329 at *6)). Though the Settlement was reached at any early stage, the record reflects that this Action has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶ 11. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.* ¶¶ 6-9. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day

mediation, and engaged in post-mediation discovery). For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

***The Adequacy of the Settlement Relief (Rule 23(e)(2)(C))*** – Although Plaintiff believes the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation poses significant risks that make any recovery for the Settlement Class uncertain. *See* Joint Decl. ¶¶ 21-24. Data breach class actions are risky. *Fortra*, 2025 WL 2675178, at *10; *Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329 at *7. The Settlement's fairness is underscored by the obstacles Plaintiff would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Id.*; Joint Decl. ¶¶ 21-24. Given those risks, the Settlement provides outstanding benefits, including Cash Payments and Medical Data Monitoring. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare").

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the Court must also examine the range of possible damages Plaintiff could recover at trial and combine this with an analysis of Plaintiff's likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming order that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high

range of what could have been obtained had the parties continued to litigate"). Settlement Class Members may elect Cash Payments and/or Medical Data Monitoring. Agreement ¶¶ 71.a.-b.

The following recent examples of approved data breach settlements from around the country demonstrate how the instant Settlement compares very favorably to other similar common fund data breach settlements: *Fortra*, No. 24-MD-03090 ($27,000,000 for six million class members); *Mednax*, No. 21-MD-02994-RAR ($6,000,000 for 2.7 million class members); *Summers v. Sea Mar 16 Comm. College*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 for 1.2 million class members); *Owens v. U.S. Radiology Specialists, Inc., et al.*, No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 for 1.3 million class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17- md-2807 (N.D. Ohio) ($4,325,000 for 1.5 million class members); *Kostka v. Dickey's Barbeque Restaurants, Inc.*, No. 3:20-CV-03424-K, 2023 WL 3914266 (N.D. Tex. June 6, 2023) ($2,350,000 for 725,000 class members); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-04172-AAS, 2024 WL 3104286, at *4 (M.D. Fla. June 24, 2024) ($7,250,000 for 2.9 million class members).

The Settlement's value to the Settlement Class is guaranteed, but the chances of prevailing on the merits are very uncertain. While Plaintiff strongly believes in the merits of her case, she also recognize Defendant would assert a number of potentially case-dispositive defenses. Joint Decl. ¶ 23. Should litigation continue, Plaintiff would have to immediately survive a motion to dismiss. *Id.* Attributable in part to their cutting-edge nature and the rapidly evolving law, data breach cases including this one generally face substantial hurdles, even to survive the pleading stage. *See, e.g.*, *Logan v. Marker Group, Inc.*, No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim); *Dougherty, et al. v. Bojangles Restaurants, Inc.*, No.

25-CV-00065, ECF No. 34 (W.D.N.C. Sep. 30, 2025) (dismissing case in its entirety at the pleadings stage). *See also In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) (legal issues involved in data breach litigation "are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues"); *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *Maldini v. Marriott Int'l*, 140 F.4th 123 (4th Cir. 2005); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. 2023); *Theus v. Brinker, Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025). Moreover, because of the quickly evolving nature of case law pertaining to data protection, it is likely a win by any party will result in interlocutory and final appeals, further increasing costs and extending the time until Plaintiff and putative class members can have a chance at relief. Joint Decl. ¶ 24. Expert testimony will be required to support liability and damages. *Id.* Also, the Claim Process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. *Id.* ¶ 25. Settlement Class Members will promptly receive Cash Payments by electronic means and Medica Data Monitoring, if elected. *Id.* The Settlement Administrator is highly qualified to manage the entire process. *Id*. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329 at *7)).

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are

also factors in considering whether the relief provided to the Class in a proposed settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel seek a reasonable one-third of the Settlement Fund for attorneys' fees plus the reimbursement of litigation costs. Joint Decl. ¶ 31. This percentage is consistent with other approved class settlements, including privacy class settlements. Class Counsel achieved a great result for the Settlement Class after undertaking substantial risk in bringing this Action on a pure contingent fee basis. The Settlement, including disbursement of the Settlement Class Member Benefits, is expressly not contingent on the attorneys' fees and costs award. Agreement ¶ 103.

Finally, the Parties' agreements are all in the Agreement. Joint Decl. ¶ 9.

***The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))*** – As this Court found in *Fortra* and *Mednax*, all Settlement Class Members have an equal opportunity to claim the Settlement Class Member Benefits. *See Fortra*, 2025 WL 2675178, at *11; *Fortra*, 2025 WL 457896, at *9; *Mednax*, 2024 WL 1554329, at *7. Here, the proposed Settlement does not improperly discriminate against any Settlement Class Members. Joint Decl. ¶ 25. The Settlement provisions for *pro rata* distributions, including the possibility of *pro rata* increase or decrease based on the amounts claimed, is measured and equitable. *Id.* Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 2675178, at *11 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)).

Thus, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members as required by the Rule 23(e)(2) and *Bennett* factors.

### C. The Court Should Appoint the Proposed Class Representative, Class Counsel, and Settlement Administrator.

Plaintiff seeks appointment as the Class Representative. She has cooperated with Class Counsel and assisted in the preparation of the Complaint and in settling the Action. Joint Decl.

¶27. Moreover, she is committed to continuing to assist Class Counsel through Final Approval. *Id.* ¶ 26. Because Plaintiff is adequate, the Court should appoint her as Class Representative. *See* § V.A.3., *supra*.

The Court should appoint Jeff Ostrow, Mariya Weekes, and Raina Borrelli as Class Counsel. Fed. R. Civ. P. 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field with extensive experience prosecuting and resolving complex class actions. Before commencing litigation, they investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶ 4. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶ 16.

Finally, subject to Court approval, the Parties agree Simpluris should be the Settlement Administrator. It is a well-respected and reputable third-party administrator with a long history of successful class action administrations, including for data breach class action settlements. *Id.* ¶ 32.

**D. The Notice Program Contains the Best Notice Practicable.**

Under Fed. R. Civ. P. 23(e)(1), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice

practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The form of the Notices were negotiated with the Settlement Administrator's help. Joint Decl. ¶ 16. Notice will be sent to all persons who fall within the Settlement Class definition and whose names and addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes. In addition, Simpluris will administer the Settlement Website containing relevant information about the Settlement. Further, the Postcard Notice includes, among other information: a description of the material Settlement terms; how to submit a Claim Form; the Claim Form Deadline; the Opt-Out Deadline; the Objection Deadline; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Agreement ¶ 78. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id*. Thus, the Court should approve the Notice Program, including the form and content of the Notices. Agreement Exs. 1-2. *See Fortra*, 2025 WL 2675178, at *12; *Fortra*, 2025 WL 457896, at *10 (approving substantially similar notice program).

### E. Proposed Schedule of Post-Settlement Events

Plaintiff respectfully proposes the schedule below for the Court's review and approval. If the Court agrees, Plaintiff requests that the Court schedule the Final Approval Hearing for the week of **October 19, 2026** (or at least 120 days following Preliminary Approval).

| | |
|---|---|
| Deadline to commence Notice Program | Within 30 days of the Preliminary Approval Order |
| Deadline to complete Notice Program | 45 days before the initial scheduled Final Approval Hearing date |
| Deadline for filing Motion for Final Approval | 45 days before the initial scheduled Final Approval Hearing date |
| Opt-out Deadline | 30 days before the initial scheduled Final Approval Hearing date |
| Objection Deadline | 30 days before the initial scheduled Final Approval Hearing date |
| Claim Form Deadline | 15 days before the initial scheduled Final Approval Hearing date |
| Final Approval Hearing | The week of **October 19, 2026** (or at least 120 days following Preliminary Approval) |

## IV. CONCLUSION

For the foregoing reasons, Plaintiff and Class Counsel respectfully request the Court: (1) preliminarily approve the Settlement; (2) certify the Settlement Class for settlement purposes only; (3) approve the Notices and Notice Program, including the opt-out and objection procedures; (4) approve the Claim Form and Claims Process; (5) appoint Plaintiff as Class Representative; (6) appoint Jeff Ostrow, Mariya Weekes, and Raina Borrelli as Class Counsel; (7) appoint Simpluris as the Settlement Administrator; and (8) enter the proposed Preliminary Approval Order, attached as Exhibit 4 to the Settlement Agreement.

## CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL

Plaintiff's counsel certifies that Plaintiff has conferred with Defendant regarding the relief requested in this Motion, and Defendant does not oppose the relief requested.

Dated: May 26, 2026

Respectfully submitted,

/s/ *Jeff Ostrow*
Jeff Ostrow FBN 121452
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel : (954) 332-4200
Fax: (954) 525-4300
ostrow@kolawyers.com

Mariya Weekes (Fla. Bar 56299)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL, 33131
Tel: (786) 206-9057
Fax: (786) 879-7520
Email: mweekes@milberg.com

Raina C. Borrelli (pro hac vice)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Tel: (872) 263-1100
Fax: (872) 263-1109
raina@straussborrelli.com

*Counsel for Plaintiff and Proposed Class*