# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM DIVISION**

**CASE NO.: 9:25-cv-81443-EA**

PATRICIA CAVALLARO-KEARINS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

MODERNIZING MEDICINE, INC.,

Defendant.

# SETTLEMENT AGREEMENT

This Settlement Agreement[1] is entered into between Plaintiff, individually, and on behalf of the Settlement Class, and Defendant, as of the date last signed below. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

## I. Procedural History

1. Defendant is a medical software firm based in Boca Raton, Florida. In the regular course of its business, Defendant maintains certain Private Information associated with Defendant's Customers' patients, including their full names, addresses, dates of birth, phone numbers, email addresses, limited Social Security numbers, health insurance information, and medical information (such as medical record numbers, patient account numbers, dates of service, provider and practice names, billing/diagnostic codes, prescription/medication information, and diagnosis and treatment information).

[1] All capitalized terms herein shall have the same meanings as those defined in Section II below.

2. On July 21, 2025, Defendant detected suspicious activity on two computer servers that were used to facilitate the conversion of limited data from retiring electronic health record ("EHR") platforms to Defendant's current EHR platform. Defendant subsequently determined that an unauthorized third party had accessed and acquired information stored on those two servers between July 9, 2025, and July 10, 2025. The unauthorized third party did not have access to customer instances of EHR systems or full medical records and did not disrupt the clinical operations or live production systems in any way.

3. Defendant conducted a comprehensive data review to identify the affected covered customers and patients. On or about October 17, 2025, after receiving delegation and instructions from Defendant's Customers, Defendant began sending notice letters to impacted individuals advising them that their Private Information may have been impacted in the Data Incident.

4. On November 19, 2025, Plaintiff Cavallaro-Kearins filed a class action lawsuit seeking to represent a putative class of individuals whose Private Information was involved in the Data Incident and alleging claims for negligence, breach of implied contact, invasion of privacy, unjust enrichment, and breach of fiduciary duty. [ECF No. 1].

5. Defendant waived service of process on December 19, 2025. [ECF No. 5].

6. The Parties decided to conserve resources and explore resolution of the entire action. The Parties set a mediation with experienced class action mediator Bruce Friedman, Esq. with JAMS for April 2, 2026.

7. On February 5, 2026, the Parties filed a Joint Motion to Stay Proceedings Pending Mediation. [ECF No. 8]. On February 18, 2026, the Court granted the motion to stay [ECF No. 11].

8. In advance of mediation, Plaintiff requested and Defendant produced informal

discovery related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident and the categories of Private Information involved. Likewise, Defendant requested and Plaintiff produced informal discovery related to her claims, including, but not limited to, information about the injuries alleged in her Complaint. The Parties also exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, and settlement.

9. The mediation took place in person in Miami, Florida on April 2, 2026. After a full day of negotiations, the Parties agreed to the material terms of the Settlement to resolve all claims on a classwide basis.

10. The Parties now agree to settle the Action entirely, without any admission by the Defendant of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendant has entered into this Agreement to resolve all controversies and disputes with Plaintiff and the Settlement Class arising out of or relating to the allegations made in the Complaint and the Data Incident, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. Defendant does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint, denies that any class could be certified in the Action outside of the settlement context, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement (including the exhibits thereto) shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose (including but not limited to in support of a motion for class certification) other than to enforce the terms of this

Agreement. Plaintiff enters into this Agreement to recover on the claims asserted in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiff does not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiff, Defendant, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II. Definitions

11. "**Action**" means the above-captioned action, *Cavallaro-Kearins v. Modernizing Medicine, Inc.*, Case No. 9:25-cv-81443-EA (S.D. Fla.).

12. "**Agreement"** or **"Settlement**" or "**Settlement Agreement**" means this Settlement Agreement between Plaintiff and Defendant.

13. "**Application for Attorneys' Fees and Costs**" means the application made with the Motion for Final Approval seeking attorneys' fees and reimbursement for costs.

17. "**CAFA Notice**" means the Class Action Fairness Act Notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed Settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

18. "**Cash Payment**" means the cash compensation paid to Settlement Class Members who submitted a Valid Claim for either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash.

19. "**Cash Payment A – Documented Losses**" or "**Cash Payment A"** means the cash compensation that Settlement Class Members with documented losses may elect under the

Settlement.

20. “**Cash Payment B – Alternate Cash**” or “**Cash Payment B”** means the cash compensation that Settlement Class Members may elect under the Settlement.

21. “**Claim Form”** means the proof of claim, substantially in the form attached hereto as ***Exhibit 3***, which may be modified as necessary, subject to the Parties’ approval.

22. “**Claim Form Deadline”** shall be 15 days before the initial scheduled Final Approval Hearing and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class member to be eligible for a Settlement Class Member Benefit.

23. “**Claimant**” means an individual who submits a Claim Form.

24. “**Claim Process**” means the process by which Claimants submit Claim Forms to the Settlement Administrator as provided by this Agreement and the Settlement Administrator determines which are Valid Claims.

25. **“Class Counsel**” means: Jeff Ostrow of Kopelowitz Ostrow P.A., Mariya Weekes of Milberg PLLC, and Raina Borrelli of Strauss Borrelli PLLC.

26. “**Class List**” is the class list provided by Defendant to the Settlement Administrator.

27. “**Class Representative**” means the Plaintiff the Court approves to serve on behalf of the Settlement Class.

28. “**Complaint**” means the Class Action Complaint filed on November 19, 2025.

29. “**Court**” means the Southern District of Florida, and the Judge(s) assigned to the Action.

30. “**Data Incident**” means the potential unauthorized activity in certain computer servers that Defendant became aware of on or around July 21, 2025.

31. “**Defendant**” means Modernizing Medicine, Inc.

32. "**Defendant's Counsel**" means Kristine McAlister Brown of Alston & Bird LLP.

33. "**Defendant's Customers**" means each and every customer of Defendant that directly or indirectly provided Settlement Class Members' Private Information to Defendant that was subject to unauthorized access as a result of the Data Incident and whose patients were notified of the Data Incident.

34. "**Effective Date**" means the later of: (a) 31 days after entry of the Final Approval Order if no appeals are taken from the Final Approval Order; or (b) if appeals are taken from the Final Approval Order, then the earlier of 31 days after the last appellate court ruling affirming the Final Approval Order or 31 days after the entry of a dismissal of the appeal.

35. "**Escrow Account**" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

36. "**Final Approval**" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

37. "**Final Approval Hearing**" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees and Costs.

38. "**Final Approval Order**" means the final order the Court enters granting Final Approval of the Settlement, substantially in the form prepared by Class Counsel and attached hereto as ***Exhibit 5***. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded.

39. "**Long Form Notice**" means the long form notice of the Settlement, substantially in the form attached hereto as ***Exhibit 2***, that shall be posted on the Settlement Website and shall

be available to Settlement Class Members by mail upon request to the Settlement Administrator.

40. "**Medical Data Monitoring**" means the CyEx monitoring product with two years of monitoring that Settlement Class Members may elect as a Settlement Class Member Benefit under the Settlement.

41. "**Motion for Final Approval**" means the motion that Plaintiff and Class Counsel shall file with the Court seeking Final Approval of the Settlement. Class Counsel shall share a draft of the Motion for Final Approval, and any memoranda in support, with Defendant at least two business days before filing same and shall consider any proposed edits by Defendant in good faith.

42. "**Motion for Preliminary Approval**" means the motion that Plaintiff and Class Counsel shall file with the court seeking Preliminary Approval of the Settlement. Class Counsel shall share a draft of the Motion for Preliminary Approval, and any memoranda in support, with Defendant at least two business days before filing same and shall consider any proposed edits by Defendant in good faith.

43. "**Net Settlement Fund**" means the amount of the Settlement Fund following payment of Settlement Administration Costs and any attorneys' fees and costs.

44. "**Notice**" means the Postcard Notice and Long Form Notice that Plaintiff will ask the Court to approve in connection with the Motion for Preliminary Approval.

45. "**Notice Program**" means the methods provided for in this Agreement for giving Notice to the Settlement Class and may consist of Postcard Notice, and Long Form Notice, along with the Settlement Website and the Settlement telephone number.

46. "**Notice of Deficiency**" means the notice sent by the Settlement Administrator to a Settlement Class Member who has submitted an invalid Claim.

47. "**Objection Deadline**" means 30 days before the initial scheduled Final Approval Hearing and is the last date by which Settlement Class Members may object to the Settlement.

48. "**Opt-Out Deadline**" means 30 days before the initial scheduled Final Approval Hearing and is the last date by which Settlement Class Members may opt-out of the Settlement.

49. "**Party**" means both Plaintiff and Defendant, and "Parties" means Plaintiff and Defendant collectively.

50. "**Plaintiff**" means Patricia Cavallaro-Kearins.

51. "**Private Information**" means the personally identifiable information and protected health information which consists of some combination of the following: full names, addresses, dates of birth, phone numbers, email addresses, Social Security numbers, health insurance information, and medical information (such as medical record numbers, patient account numbers, dates of service, provider and practice names, billing/diagnostic codes, prescription/medication information, and diagnosis and treatment information). For the avoidance of doubt, the term Private Information includes all information compromised, accessed, exfiltrated, or otherwise impacted as a result of the Data Incident.

52. "**Postcard Notice**" means the postcard notice of the Settlement, substantially in the form attached hereto as ***Exhibit 1,*** that the Settlement Administrator may disseminate to Settlement Class members by mail.

53. "**Preliminary Approval**" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form prepared by Class Counsel and attached hereto as ***Exhibit 4***.

54. "**Preliminary Approval Order**" means the order preliminarily approving the Settlement and proposed Notice Program, substantially in the form attached hereto as ***Exhibit 4***.

55. "**Releases**" means the releases and waiver set forth in Section XIII of this Agreement.

56. "**Released Claims**" means any and all actual, potential, filed or unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, joint or several, of every nature and description whatsoever, based on any federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to the Data Incident, any legal, factual, or other allegations in the Action, or any theories of recovery that were, or could have been, raised at any point in the Action.

57. "**Released Parties**" means Defendant, Defendant's Customers, and each entity which is controlled by, controls, or is under common control with, Defendant or Defendant's Customers, and their past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, executors, and trustees. It is understood that if a Released Party is not a party to the Agreement, all such Released Parties are intended as third-party beneficiaries of the Settlement Agreement.

58. "**Releasing Parties**" means Plaintiff and Settlement Class Members and their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other

representatives of any of these persons and entities.

59. "**Settlement Administrator**" or "**Simpluris**" means Simpluris, Inc.

60. "**Settlement Administration Costs**" means all costs and fees of the Settlement Administrator regarding Notice and Settlement administration.

61. "**Settlement Class**" means all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident. Excluded from the Settlement Class are: (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any member of the Settlement Class that timely and validly opt-outs of the Settlement.

62. "**Settlement Class Member**" means any member of the Settlement Class who has not opted-out of the Settlement.

63. "**Settlement Class Member Benefit**" means the Cash Payment and/or Medical Data Monitoring, elected by Settlement Class Members.

64. "**Settlement Fund**" means the non-reversionary all cash $2,999,750.00 fund that Defendant is obligated to fund or cause to be funded pursuant to Section III herein.

65. "**Settlement Website**" means the website the Settlement Administrator will establish as a means for Settlement Class Members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees and Costs, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable

for at least six months after Final Approval.

66. "**Valid Claim**" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

## III. Settlement Fund

67. Within 30 days of Preliminary Approval, Defendant shall fund or cause to be funded the entire $2,999,750.00 Settlement Fund. In no event shall Defendant be obligated to pay or cause to be paid more than $2,999,750.00 in connection with the settlement of the Action. In the event there is no Final Approval or the Effective Date does not occur, following the payment of any outstanding Settlement Administration Costs, all funds remaining in the Settlement Fund shall be returned to the Defendant.

68. The Settlement Fund shall be used to pay: (1) all Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees and costs awarded by the Court.

69. The funds in the Escrow Account shall be deemed a "qualified settlement fund"

within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the Escrow Account. The Settlement Fund shall earn a reasonable rate of interest and all interest earned on the Settlement funds shall be for the benefit of the Settlement Class. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed on Defendant, Defendant's Counsel, Plaintiff, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiff, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiff, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

## IV. **Certification of the Settlement Class**

70. In the Motion for Preliminary Approval, Plaintiff shall propose and request to the Court that the Settlement Class be certified for Settlement purposes only. Defendant agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this case shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendant shall retain all rights to object to any future requests to certify a class. Plaintiff and Class Counsel shall not reference this Agreement, any documents filed in support of the Settlement, or any orders entered by the Court in connection with the Settlement in support of any subsequent motion for class certification of any class in the Action.

## V. Settlement Class Member Benefits

71. When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. Settlement Class Members may also elect to receive Medical Data Monitoring in accordance with the terms of this paragraph. All Cash Payments will be subject to a *pro rata* (a) increase from the Net Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund or (b) decrease from the Net Settlement Fund if the amount of Valid Claims exhausts the amount of the Net Settlement Fund. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Medical Data Monitoring, then for Cash Payment A – Documented Losses, and then to all those who elect Cash Payment B. Any *pro rata* increases or decreases will be on an equal percentage basis. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Settlement Class Member Benefit.

### a. Cash Payment A – Documented Losses

Settlement Class Members may submit a claim for a Cash Payment A – Documented Losses under this section for up to $5,000.00 per Settlement Cass Member upon presentment of reasonable documented losses related to the Data Incident. To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documented losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses, which means documentation contemporaneously generated or prepared by a third party supporting a claim for expenses paid. Non-exhaustive examples of reasonable documentation include telephone records, correspondence including emails, or receipts. Personal certifications, declarations, or affidavits from the Settlement Class

Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be as if he or she elected Cash Payment B.

b. **Cash Payment B – Alternate Cash**

As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B – Alternate Cash B, which is an alternative cash payment in the estimated amount of $75.00.

c. **Medical Data Monitoring**

In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that will include two years of CyEx's Medical Shield and: (i) real time monitoring of the credit file with one credit bureau; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freezing assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft.

## VI. Settlement Approval

72. Plaintiff's Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair,

adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program and the form and content of the Notices; (4) approve the Claim Process and the form and content of the Claim Form; (5) approve the procedures for Settlement Class members to opt-out of the Settlement or for Settlement Class Members to object to the Settlement; (6) appoint Simpluris as Settlement Administrator; (7) appoint Plaintiff as Class Representative and Jeff Ostrow, Mariya Weekes, and Raina Borrelli as Class Counsel for Settlement purposes; (8) stay the Action pending Final Approval of the Settlement; and (9) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendant's Counsel.

## VII. Settlement Administrator

73. The Parties agree that, subject to Court approval, Simpluris shall be the Settlement Administrator. Class Counsel shall oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

74. The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claim Process, administering the Settlement Fund, and ensuring the distribution of all Settlement Class Member Benefits.

75. The Settlement Administrator's duties include the following:

a. Complete the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice and sending out Long Form Notices and paper Claim Forms upon request

from Settlement Class Members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

b. Establish and maintain the Settlement Fund and the Escrow Account;

c. Establish and maintain a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

d. Establish and maintain the Settlement Website to provide important information and to receive electronic Claim Forms;

e. Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class Members who call with or otherwise communicate such inquiries;

f. Respond to any mailed Settlement Class Member inquiries;

g. Process all opt-out requests from the Settlement Class;

h. Provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i. In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class Member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and

obtain Final Approval;

j. Distribute, out of the Settlement Fund, Cash Payments by electronic means;

k. Ensure the issuance of the Medical Data Monitoring activation codes to all Settlement Class Members who elect Medical Data Monitoring;

l. Pay Court-approved attorneys' fees and costs out of the Settlement Fund;

m. Pay Settlement Administration Costs out of the Settlement Fund following approval by the Parties; and

n. Any other Settlement administration function at the instruction of Class Counsel and Defendant, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments and Medical Data Monitoring activation codes have been properly distributed.

## VIII. Notice to the Settlement Class, Opt-Out Procedures, and Objection Procedures

76. Defendant will provide the Settlement Administrator with the Class List no later than 10 days after entry of the Preliminary Approval Order. To the extent necessary, Defendant will reasonably cooperate with updating the Class List to accomplish the Notice Program and otherwise administer the Settlement.

77. Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the Postcard Notice and Long Form Notice approved by the Court.

78. The Postcard Notice shall include, among other information: (a) a description of the material terms of the Settlement; (b) how to submit a Claim Form; (c) the Claim Form Deadline; (d) the Opt-out Deadline, which is the last day for Settlement Class Members to opt-out of the Settlement Class; (e) the Objection Deadline, which is the last day for Settlement Class

Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; (f) the Final Approval Hearing date; and (g) the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Class Counsel shall insert the correct dates and deadlines in the Notices before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

79. The Settlement Administrator shall perform reasonable address traces for those Postcard Notices returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. To the extent better addresses are found, the Settlement Administrator should attempt to remail the Postcard Notice.

80. The Notice Program shall be completed in its entirety no later than 45 days before the initial scheduled Final Approval Hearing.

81. The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted online directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

82. The Long Form Notice shall also include a procedure for Settlement Class Members to opt-out of the Settlement Class, and Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions. A Settlement Class

Member may opt-out of the Settlement Class at any time until the Opt-Out Deadline by mailing a request to opt-out to the Settlement Administrator postmarked no later than the Opt-Out Deadline. The opt-out request must be personally signed by the Settlement Class Member and contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to opt-out of the Settlement Class. Mass or class requests to opt-out filed by third parties on behalf of a mass or class of Settlement Class Members or multiple Settlement Class Members where the opt-out has not been signed by each and every individual Settlement Class Member will not be allowed. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Valid Claim.

83. The Long Form Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the objection instructions. Objections must be sent to the Clerk of Court, and sent by U.S. Mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the Objection Deadline, as specified in the Notice, and the Settlement Class Member must not have opted-out of the Settlement Class. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

84. For an objection to be considered by the Court, the objection must also set forth:

a. the objector's full name, mailing address, telephone number, and email address (if any);

b. all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c. the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d. the identity of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs, and whether they will appear at the Final Approval Hearing;

e. the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years;

f. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

g. a statement confirming whether the objector and or the objector's counsel utilized any form of artificial intelligence in the preparation of the objection;

h. a statement confirming whether the objector intends to personally appear

and/or testify at the Final Approval Hearing; and

i. the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel. Failure to strictly comply with each and every requirement contained in this paragraph, the Long Form Notice, and the Court's Preliminary Approval Order will result in the Court summarily overruling the objection on procedural grounds.

85. Any Settlement Class Member who opts-out of the Settlement and also objects to the Settlement, regardless of which was submitted first, will be deemed to have opted-out and the objection will be overruled.

## IX. Claim Process and Disbursement of Cash Payments

86. The Notice and the Settlement Website will explain to Settlement Class Members that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

87. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

88. The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a claim by any Claimant is a Valid Claim.

89. The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form.

The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

90. The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim Process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny claims, subject to the supervision of the Parties and ultimate oversight by the Court.

91. Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the claim and have it submitted for consideration. The Settlement Administrator shall notify the Settlement Class Member using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the

physical or e-signature. A Settlement Class Member shall have until the Claim Form Deadline, or 15 days after the date the Notice of Deficiency is sent via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Settlement Class Member timely and adequately provides the requested information and/or documentation, the claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Settlement Class Member does not timely or adequately provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the claim unless Defendant and Class Counsel otherwise agree.

92. Where a good faith basis exists, the Settlement Administrator may reduce or reject a claim for, among other reasons, the following:

a. Failure to fully complete and/or sign the Claim Form;

b. Illegible Claim Form;

c. The Claim Form is fraudulent;

d. The Claim Form is duplicative of another Claim Form;

e. The Claimant is not a Settlement Class Member;

f. The Claimant submitted a timely and valid request to opt-out of the Settlement Class.

g. The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h. Failure to submit a Claim Form by the Claim Form Deadline; and/or

i. The Claim Form otherwise does not comply with the requirements of this Settlement.

93. The Settlement Administrator's reduction or denial of a claim is final, subject to the

following dispute resolution procedures:

a. The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject claims based on findings of fraud or duplication;

b. A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this Paragraph;

c. If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants; and

d. The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

94. The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendant's Counsel. Additionally, Class Counsel and Defendant's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

95. No person or entity shall have any claim against Defendant, Defendant's Counsel, Plaintiff, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

96. No later than 45 days after the Effective Date the Settlement Administrator shall distribute the Settlement Class Member Benefits.

97. Cash Payments to Settlement Class Members will be made by electronic payment. Settlement Class Members will elect the method of electronic payment when submitting their

Claim. In the event the Settlement Administrator is unable to distribute funds to the Settlement Class Members entitled to receive them due to incorrect or incomplete information provided to the Settlement Administrator, the funds shall become residual funds, and such Settlement Class Members shall forfeit their entitlement right to the funds.

98. In the event there are funds remaining in the Settlement Fund 180 days following the date Settlement Class Members are sent their electronic payments, the undeliverable funds shall be treated as residual funds as described in Section XII.

99. No later than 45 days after the Effective Date, the Settlement Administrator will send an email to Settlement Class Members with Valid Claims that include an election for Medical Data Monitoring with information on how to enroll in the Credit Monitoring, including the activation code.

## X. Final Approval Order and Final Judgment

100. Plaintiff shall file the Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees and Costs, no later than 45 days before the initial scheduled Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiff's Motion for Final Approval of the Settlement and Application for Attorneys' Fees and Costs. In the Court's discretion, the Court will also hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees and Costs, provided the objectors submitted timely objections that meet all of the requirements listed in this Agreement.

101. At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees and Costs. Such proposed Final Approval Order shall, among other things:

a. Determine that the Settlement is fair, adequate and reasonable;

b. Finally certify the Settlement Class for settlement purposes only;

c. Determine the completed Notice Program satisfies Due Process requirements;

d. Bar and enjoin all Releasing Parties from asserting or otherwise pursuing any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

e. Release Defendant and the Released Parties from the Released Claims, as specified in Section XIII below; and

f. Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant, Plaintiff, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

**XI. <u>Attorneys' Fees and Costs</u>**

102. Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel within five days of the Effective Date.

103. This Settlement is not contingent on approval of the request for attorneys' fees and costs, and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. The provision for attorneys' fees and costs was not negotiated until after all material terms of the Settlement.

**XII. <u>Disposition of Residual Funds</u>**

104. In the event there are funds remaining in the Settlement Fund 180 days following

the date Settlement Class Members are first sent their electronic payments, any residual shall be distributed to a *cy pres* recipient approved by the Court. The Parties agree to propose the Legal Aid Society of Palm Beach County (https://legalaidpbc.org).

## XIII. Releases

105. Upon the Effective Date, and in consideration of the Settlement relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims, including but not limited to any state law or common law claims arising out of or relating to the Data Incident that the Releasing Parties may have or had.

106. The Releasing Parties expressly waive all rights under California Civil Code section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties also waive the provisions and rights of any law(s) that are comparable in effect to California Civil Code section 1542 (including, without limitation, California Civil Code § 1798.80, et seq., Montana Code Ann. § 28- 1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11). The Releasing Parties agree that, once this Agreement is executed, they will not, directly or indirectly, individually or in concert with another, maintain, cause to be maintained, or voluntarily assist in maintaining any further demand, action, claim, lawsuit, arbitration, or similar proceeding, in any capacity whatsoever, based on any of the

Released Claims.

107. Individuals who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims arising out of related to the Data Incident and will not obtain any of the Settlement Class Member Benefits under the Settlement.

108. Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiff and Settlement Class Members; and (b) Plaintiff and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting all Released Claim, whether on behalf of Plaintiff, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

109. The power to enforce any term of this Settlement is not affected by the Releases in this section.

**XIV. <u>Termination of Settlement</u>**

110. This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

a. Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

b. The Court has entered the Preliminary Approval Order;

c. The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

d. The Effective Date has occurred.

111. If any of the conditions specified in the preceding paragraph are not met, or if the

Court otherwise imposes any modification to or condition of approval of the Settlement to which the Parties do not consent, then this Agreement shall be cancelled and terminated.

112. In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the Parties shall jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, the terms and provisions of this Agreement (including the exhibits thereto) shall have no further force and effect with respect to the Parties and shall not be used in this Action or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

113. In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to the Defendant as described hereinabove. However, Defendant shall have no right to seek from Plaintiff, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid or incurred.

## XV. <u>Effect of Termination</u>

114. The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; Plaintiff's, Class Counsel's, Defendant's, and Defendant's Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

115. In the event the Settlement is terminated in accordance with the provisions of this

Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

**XVI. <u>No Admission of Liability</u>**

116. This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendant has denied and continues to deny each of the claims and contentions alleged in the Complaint. Defendant specifically denies that a class could or should be certified in the Action for litigation purposes. Defendant does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendant has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

117. Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted informal discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

118. This Agreement constitutes a compromise and settlement of disputed claims. No

action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

119. Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiff or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

120. In addition to any other defenses Defendant or the Released Parties may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XVII. Miscellaneous Provisions

121. ***Confidentiality***. To the extent permitted by ethics rules, the Parties and their counsel shall keep confidential all settlement communications, including communications regarding the negotiation and drafting of this Agreement. This paragraph shall not be construed to limit or impede the Notice requirements contained in this Agreement, nor shall this paragraph be construed to prevent Class Counsel or Defendant's Counsel from notifying or explaining that the Action has settled or limit the representations that the Parties or their counsel may make to the Court to assist in the Court's evaluation of the Settlement, Preliminary Approval, Final Approval, and any

objection to the Settlement's terms. Defendant may also provide information about the Agreement to its attorneys, members, partners, insurers, brokers, agents, and other persons or entities as required by securities laws, other applicable laws and regulations, and as necessary to effect the Settlement.

122. ***Gender and Plurals***. As used in this Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

123. ***Binding Effect***. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

124. ***Cooperation of Parties***. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

125. ***Obligation to Meet and Confer***. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

126. ***Integration and No Reliance***. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

127. ***No Conflict Intended***. Any inconsistency between the headings used in this

Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

128. ***Governing Law***. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Florida, without regard to the principles thereof regarding choice of law.

129. ***Counterparts***. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted through email of a PDF shall be deemed an original.

130. ***Jurisdiction***. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

131. ***Notices***. All notices provided for herein shall be sent by email with a hard copy sent by overnight mail to:

**<u>If to Plaintiff or Class Counsel</u>**:

Jeff Ostrow
**Kopelowitz Ostrow P.A.**

One West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
ostrow@kolawyers.com

Mariya Weekes
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
mweekes@milberg.com

Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
980 M. Michigan Ave. Ste. 1610
Chicago, IL 60611
Tel.: (972) 263-1100
raina@straussborrelli.com

**If to Defendant or Defendant's Counsel**:

Kristine McAlister Brown
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7584
Fax: (404) 881-7777
kristy.brown@alston.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

132. ***Modification and Amendment***. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

133. ***No Waiver***. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

134. ***Authority***. Any person executing this Agreement in a representative capacity

represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

135. ***Agreement Mutually Prepared***. Neither Plaintiff nor Defendant shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

136. ***Independent Investigation and Decision to Settle***. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

137. ***Receipt of Advice of Counsel***. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein,

received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

***Signatures on the following page***

**CLASS COUNSEL (On Behalf of Plaintiff and the Settlement Class)**

Jeffrey Ostrow
Jeffrey Ostrow (May 21, 2026 14:11:48 EDT)

JEFF OSTROW
**KOPELOWITZ OSTROW P.A.**

Mariya Weekes
Mariya Weekes (May 21, 2026 14:09:49 EDT)

MARIYA WEEKES
**MILBERG, PLLC**

Raina Borrelli
Raina Borrelli (May 21, 2026 13:19:47 CDT)

RAINA BORRELLI
**STRAUSS BORRELLI PLLC**

**MODERNIZING MEDICINE, INC.**

Joe Ashkouti (May 22, 2026 13:02:33 EDT)

By: Joe Ashkouti
Its Chief Legal Officer & Corporate Secretary

**MODERNIZING MEDICINE, INC.'S COUNSEL**

Kristine McAlister Brown

Kristine McAlister Brown
**ALSTON & BIRD LLP**

# EXHIBIT 1
# (POSTCARD NOTICE)

5-cv-81443-BER Document 16-1 Entered on FLSD Docket 05/26/2026 P
101

**Why am I receiving this notice?** A Settlement has been reached with Modernizing Medicine, Inc. ("ModMed") in a class action lawsuit ("Settlement"). The case relates to a cyberattack on two of ModMed's computer servers discovered in July 2025 ("Data Incident"). Files containing private information were accessed. ModMed denies that it did anything wrong, and the Court has not decided who is right. The parties agreed to the Settlement to avoid the risks, disruption, and uncertainties of continued litigation. A copy of the Settlement Agreement is available at www.[SettlementWebsite].com.

**Who is included in the Settlement?** The Settlement Class is defined as: "All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident."

The Court has appointed experienced attorneys, called "Class Counsel," to represent the Settlement Class.

**What are the Settlement benefits?** You can claim two years of **Medical Data Monitoring** from CyEx Medical Shield Complete, and **one cash payment** option.
If you have documented losses you can get back up to **$5,000** from a Documented Losses payment.
*Instead of* documented losses, you can get an estimated one-time **$75** Alternate Cash payment.
Full details and instructions are available at www.[SettlementWebsite].com and in the Long Form Notice.

**How do I receive a benefit?** If you are claiming a payment for documented losses, file all of your claims online. Otherwise, you may fill out the Claim Form below. Tear at perforation, and return by U.S. Mail. Postage is already paid. For a full paper Claim Form call **(XXX) XXX-XXXX**. **Claims must be submitted online or postmarked by [Claims Deadline]**.

**What if I don't want to participate in the Settlement?** If you do not want to be part of the Settlement, you must opt-out by **[Opt-Out Deadline]** or you will not be able to sue the Released Parties for the Released Claims. If you opt-out, you cannot make a claim for Settlement benefits. If you want to object to the Settlement, you may file an objection by **[Objection Deadline].** The Settlement Agreement and Long Form Notice, available online, explain how to opt-out or object.

**When will the Court approve the Settlement?** The Court will hold a hearing in this case on **[FA Hearing Date]** at the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, West Palm Beach, Florida 33401, to consider whether to approve the Settlement. The Court will also consider Class Counsel's request for attorneys' fees of up to 1/3 of the Settlement Fund plus litigation costs. You may attend the hearing at your own cost, but do not have to.

**This notice is only a summary. Visit the settlement website online or scan this QR code for complete information.**

www.[SettlementWebsite].com

CaseID: [CaseID]
SIMID: «SIM

**NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES**

# BUSINESS REPLY MAIL

FIRST-CLASS MAIL PERMIT NO 47 COSTA MESA CA

POSTAGE WILL BE PAID BY ADDRESSEE

**ModMed Data Incident Settlement**
**c/o Settlement Administrator**
**P.O. Box [PO Box Number]**
**Santa Ana, CA 92799-9958**

ModMed Data Incident Settlement
c/o Settlement Administrator
P.O. Box _____
Santa Ana, CA 92799-9958

First-Class Mail
US Postage Paid
Permit #__

Cavallaro-Kearins v. Modernizing Medicine, Inc.
Case No. 9:25-cv-81443-EA

LoginID: «ClaimLoginID»
PIN: «ClaimLoginPIN»

Postal Service: Please do not mark barcode

«IMbFullBarcodeEncoded»

«FirstName» «LastName»
«Address1» «Address2»
«City», «State» «Zip»

**IF YOUR PRIVATE INFORMATION WAS COMPROMISED IN THE JULY 2025 MODERNIZING MEDICINE, INC., DATA INCIDENT, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS AND ENTITLE YOU TO SETTLEMENT BENEFITS.**

A court has authorized this Notice.

This is not a solicitation from a lawyer.

You are not being sued.

**This notice is only a summary. Visit www.[SettlementWebsite].com or scan this QR code for complete information.**

QR code

---

ModMed Data Incident Settlement

«FirstName» «LastName»
«Address1» «Address2»
«City», «State» «Zip»

LoginID: «ClaimLoginID»
PIN: «ClaimLoginPIN»

Complete this Claim Form, tear at perforation, and return by U.S. Mail no later than [Claims Deadline].
Only one Claim Form per Class Member.

INSTRUCTIONS: Use this card to submit your claim for two years of Medical Data Monitoring and/or the estimated $75.00 Cash Payment B – Alternate Cash.

To claim a payment for Cash Payment A – Documented Losses, visit the settlement website at www.[SettlementWebsite].com to submit that claim online or submit a Claim Form via mail. To request a full paper Claim Form, call (XXX) XXX-XXXX.

☐ Check this box to enroll in two years of Medical Data Monitoring from CyEx Medical Shield Complete.

Please PRINT your email address below (required):

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

☐ Check this box to claim a one-time $75.00 Cash Payment B – Alternate Cash.

How would you like to be paid (Check one): ☐ PayPal ☐ Venmo ☐ Zelle ☐ Virtual Prepaid Card

Please PRINT your email address below (required):

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

MD bar code

Notify us if your contact information is different from what is shown above, or changes after submitting this form.

CaseID: [CaseID]
SIMID: «SIMID»

# EXHIBIT 2
# (LONG FORM NOTICE)

*Cavallaro-Kearins v. Modernizing Medicine, Inc.*
Case No. 9:25-cv-81443-EA
United States District Court for the Southern District of Florida

# IF YOUR PRIVATE INFORMATION WAS COMPROMISED IN THE JULY 2025 MODERNIZING MEDICINE, INC., DATA INCIDENT, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS, AND ENTITLE YOU TO SETTLEMENT BENEFITS.

*A court has authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*
***Please read this Notice carefully and completely.***

- A Settlement has been reached with Modernizing Medicine, Inc. ("ModMed" or "Defendant") in a class action lawsuit. This case is about the targeted cyberattack on two of ModMed's computer servers that were used to facilitate the conversion of limited data from retiring electronic health record ("EHR") platforms to ModMed's current EHR platform that was discovered in July 2025 ("Data Incident"). Certain files that contained Private Information were accessed. These files may have contained Private Information such as full names; addresses; dates of birth; phone numbers; email addresses; Social Security numbers; health insurance information; and medical information (such as medical record numbers; patient account numbers; dates of service; provider and practice names; billing/diagnostic codes; prescription/medication information; and diagnosis and treatment information).
- The lawsuit is called *Cavallaro-Kearins v. Modernizing Medicine, Inc.*, Case No. 9:25-cv-81443-EA. It is pending in the United States District Court for the Southern District of Florida ("Litigation").
- ModMed denies that it did anything wrong, and the Court has not decided who is right.
- The parties have agreed to settle the lawsuit ("Settlement") to avoid the costs and risks, disruptions, and uncertainties of continuing the Litigation.
- You are a Settlement Class Member if you were sent notice of the Data Incident, including notice of this Settlement.
- Your rights are affected whether you act or don't act. ***Please read this Notice carefully and completely.***

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive benefits from this Settlement is by submitting a valid and timely Claim Form.<br>The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com. If you prefer, you can download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call or email the Settlement Administrator to receive a paper copy of the Claim Form. | **______, 2026** |
| **OPT-OUT OF THE SETTLEMENT** | You can choose to opt-out of the Settlement and receive no Settlement benefits. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. You can hire your own lawyer at your own expense. | **______, 2026** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt-out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement or Class Counsel's Application for Attorneys' Fees and Costs. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also submit a claim for Settlement benefits. | **______, 2026** |
| **DO NOTHING** | Unless you opt-out of the Settlement, you are automatically part of the Settlement. If you do nothing, you will not receive benefits from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant or the Released Parties related to the Released Claims. | No Deadline |

- These rights and options—**and the deadlines to exercise them—**are explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION .......... 3
WHO IS IN THE SETTLEMENT .......... 4
THE SETTLEMENT BENEFITS .......... 4
SUBMITTING A CLAIM FORM FOR SETTLEMENT BENEFITS .......... 6
THE LAWYERS REPRESENTING YOU .......... 6
OPTING OUT OF THE SETTLEMENT .......... 7
OBJECTING TO THE SETTLEMENT .......... 7
THE COURT'S FINAL APPROVAL HEARING .......... 8
IF I DO NOTHING .......... 9
GETTING MORE INFORMATION .......... 9

# Basic Information

## 1. Why was this Notice issued?

The United States District Court for the Southern District of Florida authorized this Notice. You have a right to know about the proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The lawsuit is called *Cavallaro-Kearins v. Modernizing Medicine, Inc.*, Case No. 9:25-cv-81443-EA. It is pending in the United States District Court for the Southern District of Florida. The person that filed this lawsuit is called the "Plaintiff" (or "Class Representative") and the company she sued, Modernizing Medicine, Inc., is called the "Defendant."

## 2. What is this lawsuit about?

This lawsuit alleges that during the July 2025 targeted cyberattack on two of ModMed's computer servers, certain files that contained Private Information were accessed. These files may have contained personal information such as full names; addresses; dates of birth; phone numbers; email addresses; Social Security numbers; health insurance information; and medical information (such as medical record numbers; patient account numbers; dates of service; provider and practice names; billing/diagnostic codes; prescription/medication information; and diagnosis and treatment information).

## 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are called the "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "Class" or "Class Members." One court resolves the lawsuit for all Class Members, except for those who opt-out from the settlement. In this proposed Settlement, the Class Representative is Patricia Cavallaro-Kearins. Everyone included in this Action are the Settlement Class Members.

## 4. Why is there a Settlement?

The Court did not decide whether the Plaintiff or the Defendant are right. Both sides have agreed to a Settlement to avoid the costs and risks of a trial, and to allow the Settlement Class Members to receive benefits from the Settlement. The Plaintiff and her attorneys think the Settlement is best for all Settlement Class Members.

# Who is in the Settlement?

## 5. Who is included in the Settlement?

The court has defined the Settlement Class this way: "All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident."

## 6. Are there exceptions to being included?

Yes. Excluded from the Class are: (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any member of the Settlement Class that timely and validly opts-out of the Settlement.

If you are not sure whether you are a Settlement Class Member, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: (XXX) XXX-XXXX
- By mail: ModMed Data Incident Settlement
  c/o Settlement Administrator
  [PO Box Number]
  Santa Ana, CA 92799-9958

You may also view the Settlement Agreement at www.[SettlementWebsite].com.

# The Settlement Benefits

## 7. What does the Settlement provide?

ModMed will establish a Settlement Fund of $2,999,750.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs and the costs of administering the Settlement. The remaining Net Settlement Fund will be used to pay for the Settlement benefits described below.

**MEDICAL DATA MONITORING.** All Settlement Class Members are eligible to enroll in two years of CyEx Medical Shield Complete. This comprehensive service comes with $1 million of medical identity theft insurance with no deductible, and includes real time monitoring with one credit bureau; dark web scanning with immediate notification of potential unauthorized use; security freeze assistance; and identity theft victim assistance. If anything suspicious happens, you will be able to talk to a fraud resolution agent to help fix any problems.

**CASH PAYMENTS.** In addition to Medical Data Monitoring, all Settlement Class Members may elect Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash:

**Cash Payment A – Documented Losses.** If you incurred actual, documented out-of-pocket losses related to the Data Incident, you can get back up to **$5,000.00**. The losses must have occurred between July 9, 2025, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- losses because of identity theft or fraud
- fees for credit reports, credit monitoring, or freezing and unfreezing your credit
- cost to replace your IDs
- postage to contact banks by mail

You need to send reasonable documentation supporting the losses, which means documentation contemporaneously generated or prepared by a third party supporting a claim for expenses paid. Non-exhaustive examples include telephone records, correspondence including emails, or receipts. Your personal certification, declaration, or affidavit does not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation.

You shall not be reimbursed for expenses if you have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by ModMed or otherwise.

If you do not submit reasonable documentation supporting a loss, or if your claim is rejected by the Settlement Administrator for any reason, and you fail to cure your claim, the claim will be rejected and will be treated as if you elected Cash Payment B – Alternate Cash.

**OR**

**Cash Payment B – Alternate Cash.** You may claim a one-time estimated **$75.00** cash payment. You do not have to provide any proof or explanation to claim this payment.

Depending on the total number and total value of Cash Payment claims, your payment may be slightly higher or lower than the amount you claim.

A full explanation of how this works is provided in Paragraph 71 of the Settlement Agreement, which can be found at www.[SettlementWebsite].com.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: (XXX) XXX-XXXX
- By mail: ModMed Data Incident Settlement
  c/o Settlement Administrator
  [PO Box Number]
  Santa Ana, CA 92799-9958

## 8. What claims am I releasing if I stay in the Class?

If you stay in the Settlement Class, you won't be able to be part of any other lawsuit against ModMed or the Released Parties related to the Released Claims. The "Releases" section of the Settlement Agreement (Section XIII) describes the legal claims that you give up if you remain in the Settlement Class. The Settlement Agreement is available at www.[SettlementWebsite].com.

# Submitting a Claim Form for a Settlement Payment

## 9. How do I submit a claim for a Settlement benefit?

The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com. If you prefer, you can download a printable Claim Form from the website and mail it to the Settlement Administrator at:

ModMed Data Incident Settlement
c/o Settlement Administrator
[PO Box Number]
Santa Ana, CA 92799-9958

You may also contact the Settlement Administrator to request a Claim Form by telephone, toll free, (XXX) XXX-XXXX, by email info@[SettlementWebsite].com, or by U.S. mail at the address above.

## 10. Are there any important Settlement payment deadlines?

If you are submitting a Claim Form online, you must do so by [Claims Deadline]. If you are submitting a claim by U.S. mail, the completed and signed Claim Form, including supporting documentation, must be postmarked no later than [Claims Deadline].

## 11. When will the Settlement benefits be issued?

The Court will hold a Final Approval Hearing on [FA Hearing Date] (***see* Question 18**). If the Court approves the Settlement, there may be appeals. We do not know if appeals will be filed, or how long it will take to resolve them if they are filed.

Settlement payments and activation codes for Medical Data Monitoring will be distributed if the Court grants final approval, and after any appeals are resolved.

## The Lawyers Representing You

### 12. Do I have a lawyer in the case?

Yes, the Court has appointed attorneys Jeff Ostrow of Kopelowitz Ostrow P.A., Mariya Weekes of Milberg PLLC, and Raina Borrelli of Strauss Borrelli PLLC, to represent you and other Settlement Class Members ("Class Counsel").

### 13. Should I get my own lawyer?

You will not be charged for Class Counsel's services. If you want your own lawyer, you may hire one at your expense.

### 14. How will Class Counsel be paid?

Class Counsel will ask the court to approve up to one-third of the Settlement Fund as reasonable attorneys' fees, plus reimbursement of litigation costs.

## Opting Out of the Settlement

### 15. How do I opt-out of the Settlement?

If you do not want to be part of the Settlement, you must formally exclude yourself from the Settlement. This is called an Opt-Out Request.

If you opt-out, you are telling the Court that you do not want to be part of the Settlement. You will not be eligible to receive any Settlement benefits if you opt-out. However, you will keep any rights you may have to sue ModMed on your own about the legal issues in this case.

The deadline to exclude yourself from the Settlement is **[Opt-Out Deadline]**.

To be valid, your Opt-Out Request must have the following information:

(1) the name of the Litigation: *Cavallaro-Kearins v. Modernizing Medicine, Inc.*, Case No. 9:25-cv-81443-EA, pending in the United States District Court for the Southern District of Florida;

(2) your full name, mailing address, telephone number, and email address (if any);

(3) personal signature; and

(4) the words "Opt-Out Request" or a clear and similar statement that you do not want to participate in the Settlement.

You may only exclude yourself—not any other person.

Mail your Opt-Out Request to the Settlement Administrator at:

ModMed Data Incident Settlement
ATTN: Exclusion Request
[PO Box Number]
Santa Ana, CA 92799-9958

Your Opt-Out Request must be submitted, postmarked, or emailed by **[Opt-Out Deadline]**.

# Objecting to the Settlement

## 16. How do I tell the Court if I like or do not like the Settlement?

If you are a Settlement Class Member and do not like part or all of the Settlement, you can object to it. Objecting means telling the Court your reasons for why you think the Court should not approve the Settlement. The Court will consider your views.

You cannot object if you have opted-out from the Settlement (***see* Question 15**)

You must provide the following information for the Court to consider your objection:

(1) the objector's full name, mailing address, telephone number, and email address (if any);

(2) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

(3) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

(4) the identity of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs, and whether they will appear at the Final Approval Hearing;

(5) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years;

(6) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

(7) a statement confirming whether the objector and or the objector's counsel utilized any form of artificial intelligence in the preparation of the objection;

(8) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

(9) the objector's signature (an attorney's signature is not sufficient).

For your objection to be valid, it must meet each of these requirements.

To be considered by the Court, you must file your complete objection with the Clerk of Court by [**OBJECTION DATE**]. You must also send a copy of the objection to the Settlement Administrator, Class Counsel, and Defendant's Counsel.

| Clerk of the Court | Settlement Administrator |
|---|---|
| Clerk of the Court<br>Paul G. Rogers Federal Building<br>and U.S. Courthouse<br>701 Clematis Street, Room 202<br>West Palm Beach, FL 33401 | ModMed Data Incident Settlement<br>ATTN: Objections<br>[PO Box Number]<br>Santa Ana, CA 92799-9958 |

| Class Counsel | Defendant's Counsel |
|---|---|
| Jeff Ostrow<br>**KOPELOWITZ OSTROW P.A.**<br>One West Las Olas Boulevard, Suite 500<br>Fort Lauderdale, FL 33301<br><br>Mariya Weekes<br>**MILBERG, PLLC**<br>333 SE 2nd Avenue, Suite 2000<br>Miami, FL 33131<br><br>Raina C. Borrelli<br>**STRAUSS BORRELLI PLLC**<br>980 M. Michigan Avenue, Suite 1610<br>Chicago, IL 60611 | Kristine McAlister Brown<br>**ALSTON & BIRD LLP**<br>1201 West Peachtree Street<br>Atlanta, GA 30309 |

### 17. What is the difference between objecting and opting out?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not opt-out from the Settlement. Opting out from the Settlement is stating to the Court that you do not want to be part of the Settlement. If you opt-out of the Settlement, you cannot object to it because the Settlement no longer affects you.

If you opt-out of the Settlement and also object to the Settlement, regardless of which was submitted first, you will be deemed to have opted-out and your objection will be overruled.

## The Court's Final Approval Hearing

### 18. When is the Court's Final Approval Hearing?

The Court will hold a Final Approval Hearing on **[FA Hearing Date] at [Hearing Time] Eastern Time**, in Room [Court Room] of the United States District Court for the Southern District of Florida, at Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, West Palm Beach, FL 33401 .

At the Final Approval Hearing, the Court will decide whether to approve the Settlement. The court will also decide Class Counsel's request for an attorneys' fees and costs. The Court will also consider any objections to the Settlement.

If you are a Settlement Class Member, you or your lawyer may ask permission to speak at the hearing at your own cost (***See* Question 16**).

The date and time of this hearing may change without further notice. Please check www.[SettlementWebsite].com for updates.

### 19. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish, but you do not have to.

If you file an objection, you do not have to come to the Final Approval Hearing to talk about it; the Court will consider it as long as it was filed on time. You may also pay your own lawyer to attend, but you do not have to.

# If I Do Nothing

## 20. What happens if I do nothing at all?

If you do nothing, you will not receive a benefit from this Settlement.

You will also give up the rights described in **Question 8**.

# Getting More Information

## 21. How do I get more information?

This Notice is a summary of the proposed Settlement. The full Settlement Agreement and other related documents are available at the Settlement Website, www.[SettlementWebsite].com.

If you have additional questions, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: (XXX) XXX-XXXX
- By mail: ModMed Data Incident Settlement<br>c/o Settlement Administrator<br>[PO Box Number]<br>Santa Ana, CA 92799-9958

You can obtain copies of publicly filed documents by visiting the office of the Clerk of the Court, United States District Court for the Southern District of Florida, at Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401 .

**DO NOT CONTACT THE COURT OR CLERK OF COURT REGARDING THIS SETTLEMENT**

# EXHIBIT 3
# (CLAIM FORM)

# CLAIM FORM

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**
*Cavallaro-Kearins v. Modernizing Medicine, Inc.*
Case No. 9:25-cv-81443-EA

ModMed Data Incident Settlement
P.O. Box [PO Box Number]
Santa Ana, CA 92799

(XXX) XXX-XXXX
info@[SettlementWebsite].com
www.[SettlementWebsite].com

---

**TO BE ELIGIBLE TO RECEIVE BENEFITS FROM THIS SETTLEMENT,**
**YOU MUST BE A SETTLEMENT CLASS MEMBER.**

The court has defined the Settlement Class this way: "All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident."

**Excluded from the Settlement Class** are: (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any member of the Settlement Class that timely and validly opt-outs of the Settlement.

You may submit your Claim Form through the Settlement Website, www.[SettlementWebsite].com, or by completing and signing this Claim Form.

**Claims must be received by [Claims Deadline].**

Paper Claim Forms must be mailed through the United States Postal Service, so that they are received by the Settlement Administrator **no later than [Claims Deadline]**. Please mail to:

Settlement Administrator
ModMed Data Incident Settlement
P.O. Box [PO Box Number]
Santa Ana, CA 92799

**Do not mail or deliver your Claim Form to the Court, the Settling Parties, or their counsel.**

## GENERAL INFORMATION

1. Complete information about the proposed Settlement is available at www.[SettlementWebsite].com.
2. If you submitted a request to opt-out from the Settlement, do not submit a claim.
3. Submit only one Claim Form, online or paper, per person.

## SETTLEMENT BENEFITS

ModMed will establish a Settlement Fund of $2,999,750.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs and the costs of administering the Settlement. The remaining Net Settlement Fund will be used to pay for the Settlement benefits described below.

**MEDICAL DATA MONITORING.** All Settlement Class Members are eligible to enroll in two years of CyEx Medical Shield Complete. This comprehensive service comes with $1 million of medical identity theft insurance with no deductible, and includes real time monitoring with one credit bureau; dark web scanning with immediate notification of potential unauthorized use; security freeze assistance; and identity theft victim assistance. If anything suspicious happens, you will be able to talk to a fraud resolution agent to help fix any problems.

**CASH PAYMENTS.** In addition to Medical Data Monitoring, all Settlement Class Members may elect Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash:

**Cash Payment A – Documented Losses.** If you incurred actual, documented out-of-pocket losses due to the Data Incident, you can get back up to **$5,000.00**. The losses must have occurred between July 9, 2025, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- losses because of identity theft or fraud
- fees for credit reports, credit monitoring, or freezing and unfreezing your credit
- cost to replace your IDs
- postage to contact banks by mail

You need to send reasonable documentation supporting the losses, which means documentation contemporaneously generated or prepared by a third party supporting a claim for expenses paid. Non-exhaustive examples include telephone records, correspondence including emails, or receipts. Your personal certification, declaration, or affidavit does not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation.

You shall not be reimbursed for expenses if you have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by ModMed or otherwise.

If you do not submit reasonable documentation supporting a loss, or if your claim is rejected by the Settlement Administrator for any reason, and you fail to cure your claim, the claim will be rejected and will be treated as if you elected Cash Payment B – Alternate Cash.

**OR**

**Cash Payment B – Alternate Cash.** *Instead of any other payments*, you may claim a one-time estimated **$75.00** cash payment. You do not have to provide any proof or explanation to claim this payment.

Depending on the total number and total value of Cash Payment claims, your payment may be slightly higher or lower than the amount you claim.

A full explanation of how this works is provided in Paragraph 71 of the Settlement Agreement, which can be found at www.[SettlementWebsite].com.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

| | |
|---|---|
| Online: | www.[SettlementWebsite].com |
| By email: | info@[SettlementWebsite].com |
| By toll-free call: | (XXX) XXX-XXXX |
| By mail: | Settlement Administrator<br>ModMed Data Incident Settlement<br>c/o Settlement Administrator<br>[PO Box Number]<br>Santa Ana, CA 92799-9958 |

**THE MOST EFFICIENT WAY TO SUBMIT YOUR CLAIMS IS ONLINE AT www.[SettlementWebsite].com**

You may also print out and complete this Claim Form, and submit it by U.S. mail.

**Claims must be received by [Claims Deadline].**

If you contact information changes after you submit your claim, notify the Settlement Administrator.

## I. SETTLEMENT CLASS MEMBER NAME AND CONTACT INFORMATION

Please complete this entire section. The Settlement Administrator will use this information to get in touch with you regarding your claim. If you contact information changes after you submit your claim, notify the Settlement Administrator. **Please write legibly.**

**Settlement Class Member First Name** **MI**

**Settlement Class Member Last Name**

**Address 1 (street name and number)**

**Address 2 (apartment, unit, or box number)**

**City** **State** **ZIP**

**Email Address**

**Telephone Number**

      -       -

**Login ID (if known)**

## II. MEDICAL DATA MONITORING

☐ Check this box if you would like to enroll in two years of Medical Data Monitoring from CyEx Medical Shield Complete.

## III. CASH PAYMENT A – DOCUMENTED LOSSES

☐ Check this box if you would like to claim reimbursement for documented losses due to identity theft or fraud. You can get back up to $5,000.00.

**DO NOT CLAIM THIS BENEFIT IF YOU ARE CLAIMING A PAYMENT FROM SECTION IV.**

*Please complete the table below, describing the supporting documentation you are submitting.*

| ***Description of Documentation Provided*** | ***Amount*** |
|---|---|
| *Example: Unauthorized bank transfer* | *$500* |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL CLAIMED:** | |

If you have more expenses than rows, you may attach additional sheets of paper to account for them. Please print your name and sign the bottom of each additional sheet of paper.

## IV. CASH PAYMENT B – ALTERNATE CASH

☐ Check this box if you want to claim a one-time estimated $75.00 cash payment.

**DO NOT CLAIM THIS BENEFIT IF YOU ARE CLAIMING A PAYMENT FROM SECTION III**.

## V. PAYMENT SELECTION

Please select **one** of the following payment options, which will be used if you are claiming a cash payment. NO CHECKS WILL BE SENT.

☐ **PAYPAL**
Email address associated with your PayPal account, if different than you provided in Section I:

☐ **VENMO**
Telephone number associated with your Venmo account, if different than you provided in Section I:

_ _ _ - _ _ _ - _ _ _ _

☐ **ZELLE**
Email address associated with your Zelle account, if different than you provided in Section I:

OR

Telephone number associated with your Zelle account, if different than you provided in Section I:

_ _ _ - _ _ _ - _ _ _ _

☐ **VIRTUAL PREPAID CARD**

Email address where you want to receive your prepaid card, if different than you provided in Section I:

| | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | | | | | | | |

## VI. ATTESTATION AND SIGNATURE

I swear and affirm on penalty of perjury that the information provided in this Claim Form, including supporting documentation, is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator before my claim is considered complete and valid.

Settlement Class Member Signature

MM DD YY

Please print or type your name on the line above.

# EXHIBIT 4
# (PRELIMINARY APPROVAL ORDER)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM DIVISION**

**CASE NO.: 9:25-cv-81443-EA**

PATRICIA CAVALLARO-KEARINS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

MODERNIZING MEDICINE, INC.,

Defendant.

**[PROPOSED] ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**THIS CAUSE** comes before the Court on Plaintiff's Unopposed Motion for Preliminary Approval[1] requesting entry of an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing Plaintiff as the Class Representative; (iv) appointing Class Counsel for the Settlement Class; (v) approving the form of Notices and the Notice Program; (vi) approving the Claim Form and the Claim Process; (vii) appointing the Settlement Administrator; (viii) establishing procedures for members of the Settlement Class to opt-out of or object to the Settlement; and (ix) scheduling a Final Approval Hearing on whether to grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs. [ECF No. __ ].

Having carefully reviewed the proposed Settlement and its exhibits, all relevant filings, and the record, the Court finds the proposed Settlement satisfies the criteria for preliminary

[1] All capitalized terms used herein have the same meanings as those defined in Section II of the Settlement Agreement attached to the Motion for Preliminary Approval as *Exhibit A*.

approval, the proposed Settlement Class should be preliminarily certified, the proposed Notice Program and Claim Process should be approved, and Class Representative, Class Counsel, and the Settlement Administrator should be appointed. Accordingly, it is hereby: **ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

## BACKGROUND

The procedural and factual background of this Action outlined in Plaintiffs' Motion for Preliminary Approval (ECF No. ___) is incorporated herein.

The Settlement provides monetary relief that includes a non-reversionary all-cash Settlement Fund of $2,999,750.00. It provides valuable Settlement Class Member Benefits including the ability of Settlement Class Members to submit a Claim for two years of Medical Data Monitoring and Cash Payment A – Documented for up to $5,000.00 of documented losses or Cash Payment B – Alternate Payment estimated to be $75.00. The Settlement Fund will be used to pay: (i) all Settlement Class Member Benefits; (ii) any attorneys' fees and costs awarded by the Court to Class Counsel; and (iii) all Settlement Administration Costs.

Plaintiff now seeks Preliminary Approval of the Settlement on behalf of the proposed Settlement Class. Defendant does not oppose the relief sought in the Motion for Preliminary Approval and agrees the Court should grant Preliminary Approval of the Settlement and allow Notice to issue to the Settlement Class. As further discussed below, the Settlement falls within the range of judicial approval and includes comprehensive Notice Program and Claim Process. As such, Preliminary Approval of the proposed Settlement is warranted.

## LEGAL STANDARD

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v.*

*Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id.* In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Federal Rule of Civil Procedure 23(a) factors and at least one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See id.* at 671–672; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under Rule 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Eleventh Circuit also requires that the class representatives have standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

Before addressing any Rule 23 factor, however, the Court must ensure that standing under Article III is met. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing . . . ."). To satisfy Article III standing, a plaintiff must "(1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 338 (2016).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether:

(A) the class representative and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
  (i) the costs, risks, and delay of trial and appeal;
  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
  (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

*Id.* Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors." *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984)). These additional factors are (a) "there was no fraud or collusion in arriving at the settlement," and (b) the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986 ("*Bennett* factors").

Courts have substantial discretion in approving a settlement agreement, *Bennett*, 737 F.2d at 986, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual for Compl. Lit., Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (cleaned up). "Preliminary approval is appropriate where the proposed

settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co*., No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (cleaned up).

## ANALYSIS

The Court finds, for settlement purposes only and conditioned on final certification of the Settlement Class and entry of a Final Approval Order, that the Settlement Class and proposed Settlement satisfy the requirements of Rule 23(a), 23(b)(3), and 23(e), and the *Bennett* factors.

### A. Certification Of The Settlement Class Is Appropriate.

The Court finds, for settlement purposes only, that the Rule 23 factors are satisfied, and certification of the proposed Settlement Class is appropriate under Rule 23. The Court further finds that the Article III standing requirement is met here.

The Court therefore provisionally certifies the following Settlement Class:

> All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident.
>
> Excluded from the Settlement Class are: (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any member of the Settlement Class that timely and validly opt-outs of the Settlement.

The Court will address each Rule 23(a) and 23(b)(3) factor in turn.

#### 1. The Rule 23(a) Factors Are Satisfied.

##### *(i) Rule 23(a)(1) - Numerosity*

Rule 23(a)(1) requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is "generally a low hurdle" and, as a baseline, "less than twenty-one is inadequate . . . [and] more than forty is adequate[.]"

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (cleaned up). Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class includes approximately 386,000 individuals. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied where there are more than 40 class members); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 2675178, at *5 (S.D. Fla. Sept. 17, 2025); *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *4 (S.D. Fla. Feb. 11, 2025); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024). The joinder of approximately 386,000 Settlement Class Members would certainly be impracticable, and thus numerosity is satisfied.

***(ii) Rule 23(a)(2) - Commonality***

Rule 23(a)(2) requires that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (cleaned up). The commonality requirement is a "low hurdle." *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., Fortra*, 2025 WL 2675178, at *5-6; *Fortra*, 2025 WL 457896, at *4; *Mednax*, 2024 WL 1554329, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *see also Equifax*, 999 F.3d

at 1274–75, 1277 (affirming district court's certification of class, including finding of commonality).

Here, Plaintiff and Settlement Class Members all had their Private Information impacted by the Data Incident. Plaintiff's claims turn on whether Defendant's data security environment was adequate to protect Plaintiff's and the Settlement Class' Private Information. These issues are common to the Settlement Class, are alleged to have injured all Settlement Class Members in the same way, and would generate common answers central to the viability of all claims were this case to proceed to trial. In other words, evidence to resolve said claims does not vary among Settlement Class Members and can therefore be fairly resolved, for purposes of settlement, for all Settlement Class Members at once. Thus, commonality is satisfied.

***(iii) Rule 23(a)(3) - Typicality***

Under Rule 23(a)(3), a class representative's claims must also be typical of the putative class they seek to represent. *See* Fed. R. Civ. P. 23(a)(3). Typicality under Rule 23(a)(3) "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). "Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and [] factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (cleaned up); *see also Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). When the same course of conduct is directed at the named plaintiff and the members of the proposed class, typicality is satisfied. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiff's interests are aligned with the Settlement Class in that they were all sent a notice letter indicating their Private Information may have been impacted in the Data Incident and were therefore all affected by the same purportedly inadequate security that allegedly harmed Settlement Class Members. Plaintiff's claims are based on the same legal theories and underlying event. Thus, the typicality requirement is satisfied. *See Hines*, 334 F.3d at 1256; *Mednax*, 2024 WL 1554329, at *4.

***(iv) Rule 23(a)(4) - Adequacy***

Adequacy under Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy relates to (i) whether the proposed class representative has interests antagonistic to the class, and (ii) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314–15 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp's Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (cleaned up); *Fortra*, 2025 WL 2675178, at *6; *Fortra*, 2025 WL 457896, at *5; *Mednax*, 2024 WL 17477004 at *5.

Here, like all Settlement Class Members, Plaintiff has claims against Defendant arising from the Data Incident that allegedly impacted her Private Information. Plaintiff was similarly injured by Defendant's allegedly wrongful acts. Proof of Plaintiff's claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiff and the Settlement Class she seeks to represent have the same interests in recovering damages and other relief. Further, Plaintiff has also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly

providing documents and information to Class Counsel, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. Plaintiff is committed to continuing to assist Class Counsel through Final Approval.

Accordingly, Plaintiff has no conflict with the Settlement Class and has demonstrated her adequacy as a Class Representative by "(i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *Fortra*, 2025 WL 2675178, at *7 (citing *Fortra*, 2025 WL 457896, at *5 (quoting *Mednax*, 2024 WL 1554329, at *5)).

As for Class Counsel, they are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context, demonstrating their adequacy. *See Mednax*, 2024 WL 17477004 at *5 ("Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators."). Class Counsel have litigated this Action, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting with liability and damages experts, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. *See Fortra*, 2025 WL 2675178, at *7; *Fortra*, 2025 WL 457896, at *5. The adequacy requirement is therefore met.

**2. The Rule 23(b) Factors Are Satisfied.**

Having found that all Rule 23(a) factors are satisfied, the Court proceeds to address at least one subsection of Rule 23(b)—namely, Rule 23(b)(3)—to ascertain whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and to ensure "a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

***(i) Predominance***

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Id.* at 623. "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig.*, No. 2599, 2023 WL 4925368, at *6 (S.D. Fla. June 20, 2023). The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *Id.* at 312; *Fortra*, 2025 WL 2675178, at *8; *Fortra*, 2025 WL 457896, at *6; *Mednax*, 2024 WL 17477004 at *5. All Settlement Class Members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person. "Thus, because these common questions

represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Fortra*, 2025 WL 2675178, at *7 (citing *Fortra*, 2025 WL 457896, at *6 (quoting *Mednax*, 2024 WL 1554329, at *5)). The predominance requirement is therefore satisfied.

***(ii) Superiority***

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs." *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (cleaned up); *Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 2025 WL 457896, at *6, and *Mednax*, 2024 WL 1554329, at *5). Here, adjudicating individual actions would be impractical. The amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. Accordingly, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted.

**3. The Article III Standing Requirement Is Met.**

To demonstrate Article III standing Plaintiff must establish that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites,

but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado*, 221 F.3d at 1279). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 2025 WL 457896, at *7, and *Equifax*, 999 F.3d at 1261 n.8).

"Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach." *Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 2025 WL 457896, at *6, and *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022)). In a similar data breach class action, this Court extensively addressed standing in data breach class actions, and subsequently relied on that analysis when preliminarily approving a class settlement in that case. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-08 (S.D. Fla. 2022) (denying motion to dismiss for lack of standing, including in the context of *TransUnion LLC v. Ramirez*, 594 U.S. 2190 (2021)); *Mednax*, 2024 WL 1554329, at *4 n.2 (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023)) (citing standing analysis from motion to dismiss opinion and preliminarily approving class settlement).

To establish an imminent threat of identity theft based on a data breach, plaintiff must show that "some misuse of class members' data" has already occurred. *Green-Cooper*, 73 F. 4th at 889 (citing *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021)). Plaintiff's allegations in the Complaint that an unauthorized third party "gained actual access to sensitive data," "successfully acquired data," and that "on information and belief, Plaintiff's and the Class's stolen PII/PHI has already been published—or will be published imminently—by cybercriminals on the dark web", if true, support that misuse. Compl. ¶¶ 31, 33; *see Green-Cooper*,

73 F. 4th at 890 (posting of Private Information on the dark web "establishes both a present injury . . . and a substantial risk of future injury"). At this stage of the proceedings where no discovery has taken place, and solely for purposes of determining whether preliminary approval of the settlement should be granted, the Court must take these allegations as true and finds that they can be considered injuries-in-fact under Article III. *See In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 4547212, at *3-7 (S.D. Fla. Feb. 11, 2025) (denying motion to dismiss for lack of standing); *Mednax*, 603 F. Supp. 3d at 1202–05.

Traceability—the causal connection between the Data Incident and the Settlement Class' injuries—also exists for Article III standing. Plaintiff and Settlement Class Members' injuries must be "fairly traceable" to Defendant's actions, but that does not mean they are required to show proximate cause, as harms flowing indirectly from the Data Incident are sufficient for standing. *See Fortra*, 2024 WL 4547212, at *6-7; *Mednax*, 603 F. Supp. 3d at 1205. Defendant's alleged failure to protect the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiff's economic losses, lost time, and emotional distress, and put her at a substantial risk of future incidents of identity theft too. *See Fortra*, 2025 WL 2675178, at *9; *Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206.

Thus, like in *Fortra*, *Mednax*, and *Desue*, because Plaintiff and Settlement Class Members had their Private Information impacted in the Data Incident, they have all suffered injuries in fact that are fairly traceable to the Data Incident and would likely be redressed by a favorable judgment if this case was litigated through trial, demonstrating Article III standing. The Court therefore provisionally certifies the Settlement Class. *See Fortra*, 2025 WL 2675178, at *9; *Fortra*, 2025 WL 457896, at *8.

**B. <u>Preliminary Approval of the Settlement Is Warranted.</u>**

Next, the Court must preliminarily determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Bennett* factors. At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, No. 8:20-cv-105, 2021 WL 2954741, at *7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4 Newberg on Class Actions § 13:10 (5th ed. Supp. 2020)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith*, 2010 WL 2401149, at *2.

The Court finds the Settlement satisfies the requirements of Rule 23(e) as well as the *Bennett* factors. The Court will address each factor in turn.[2]

**1. Rule 23(e)(2)(A) – Adequacy of Representation**

Class Counsel have adequately represented the Settlement Class' interests for purposes of Preliminary Approval of the Settlement through the extensive litigation efforts described in the Motion for Preliminary Approval and discussed in this Order. Additionally, Plaintiff's interests are coextensive and do not conflict with the interests of the Settlement Class, demonstrating her adequacy. Plaintiff has the same interest in the Settlement relief as do Settlement Class Members, and the absent Settlement Class Members have no diverging interests. Accordingly, the first Rule 23(e)(2) factor weighs heavily in favor of granting Preliminary Approval because both Class Counsel and the Class Representatives have adequately represented the Settlement Class. *See*

[2] The fifth *Bennett* factor—opposition to the Settlement, if any— cannot be discerned at this time because Notice has not yet been given to the Settlement Class. *See Mednax*, 2024 WL 1554329at *7.

*Fortra*, 2025 WL 2675178, at *9; *Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329, at *6.

2. **Rule 23(e)(2)(B) and *Bennett* Factor 6 — Arm's Length Negotiations**

The Court finds the Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *See Fortra*, 2025 WL 2675178, at *10; *Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 17477004 at *6. Before discussing a potential resolution, the Parties conducted thorough factual and legal investigation including significant pre-mediation discovery, allowing them to fully understand the claims, defenses, and risks of continued litigation. The Settlement was reached after extensive legal and factual investigation by the Parties, a full-day mediation assisted by a well-respected and experienced mediator, and additional negotiations to finalize the terms of the Agreement and ancillary documents. The Parties did not discuss attorneys' fees and costs until after they had agreed on all material Settlement terms.

For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *See Bennett*, 737 F.2d at 986. Accordingly, "[t]he fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329, at *6)).

**3. Rule 23(e)(2)(C) and *Bennett* Factors 1-4 – Adequacy of Settlement Relief**

The Court finds, considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is reasonable. While Plaintiff believes the claims

asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. "[D]ata breach class actions are risky cases." *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7) (citation omitted); *see also Fox v. Iowa Health Sys*., No. 3:18-cv00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc*., No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."). And given the complexity of the claims and arguments here, a lengthy trial would likely be required before Settlement Class Members could recover. Maintaining class certification through trial "is another over-arching risk" as well. *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)). Class certification has been denied in other data breach cases. *See, e.g.*, *Maldini v. Marriott Int'l*, 140 F.4th 123 (4th Cir. 2005); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. 2023); *Theus v. Brinker, Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025). "Thus, through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all," weighing heavily in favor of preliminary approval. *Fortra*, 2025 WL 2675178, at *10 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)).

Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments and Credit Monitoring for all Settlement Class Members. *See Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches").

All Settlement Class Members are given an equal opportunity to receive the Settlement Class Member Benefits. Specifically, each Settlement Class Member has the option to be reimbursed for documented losses up to $5,000.00, or they may elect to receive a flat cash payment in the estimated amount of $75.00. In addition, all Settlement Class Members may elect two years of Medical Data Monitoring, which includes $1,000,000.00 in insurance coverage.

The Court further finds the Claim Process and distribution of Settlement Class Member Benefits to be fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means and Medical Data Monitoring activation codes, if elected. The Settlement Administrator is highly qualified to manage the entire process. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 2675178, at *11 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)).

Furthermore, the attorneys' fees do not impact the other terms of the Settlement. Class Counsel intend to request up to one-third of the Settlement Fund in attorneys' fees, plus reimbursement of costs, to be paid from the Settlement Fund, subject to this Court's approval. The maximum attorneys' fees appear reasonable to the Court under a preliminary review of the relevant factors outlined in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and adopted by the Eleventh Circuit in *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 772 n.3 775 (11th Cir. 1991). The Court will evaluate the request again at Final Approval once Class Counsel file their Application for Attorneys' Fees and Costs. Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or costs award to Class Counsel. Finally, the Parties' agreements are all in the Agreement.

**4. Rule 23(e)(2)(D) – Equitable Treatment of Settlement Class Members**

All Settlement Class Members have an equal opportunity to submit a Claim for Medical Data Monitoring and Cash Payments. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 2675178, at *11 (citing *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7)).

Accordingly, the Court is likely to find the Settlement fair, reasonable, and adequately protects the interests of the Settlement Class Members.

**C. <u>Appointment of Class Representatives and Class Counsel Is Appropriate.</u>**

For the reasons discussed above, the Court finds Plaintiff has adequately represented the Settlement Class throughout this Action. The Court therefore designates and appoints Plaintiff as the Class Representative.

Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Federal Rule of Civil Procedure 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

The Court finds proposed Class Counsel have a reasonable amount of time, effort, and expense investigating the Data Incident and in litigating this Action. Further, it is clear from their track record of success, as outlined in their resumes, that Class Counsel are highly skilled and knowledgeable concerning class action practice. Therefore, for purposes of the Settlement only, and pursuant to Rule 23(g)(1), the Court appoints Mariya Weekes, Jeff Ostrow, and Raina Borrelli

as Class Counsel to act on behalf of the Settlement Class with respect to the Settlement. They are experienced and competent counsel and will adequately protect the interests of the Settlement Class.

**D. <u>The Notice Program Is Sufficient.</u>**

Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court finds the form, content, and method of giving notice to the Settlement Class as described in the Notice Program, including the forms of Postcard Notice and Long Form Notice, Settlement Website, Settlement telephone line for frequently asked questions, and Claim Form, (a) constitutes the best practicable notice to the Settlement Class; (b) is reasonably calculated, under the circumstances, to apprise to apprise Settlement Class Members of the pendency of the Action, the terms of the Settlement, the effect of the proposed Settlement (including the Releases contained therein), and their rights under the proposed Settlement, including the right to opt-out of or to object to the proposed Settlement and appear at the Final Approval Hearing; (c) is reasonable and constitutes due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

Rule 23(h)(1) further requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the

Settlement Class that Class Counsel will apply to the Court for an award of attorneys' fees of up to one third of the Settlement Fund, plus reimbursement of costs.

Accordingly, the Notice Program satisfies the requirements of Rule of Civil Procedure 23(c)(2)(B) and due process and is thus approved.

**PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT**

Upon preliminary review, the Court finds the proposed Settlement is fair, reasonable, and adequate; the Settlement Class should be certified for Settlement purposes; and the Notice Program satisfies the requirements of Rule 23 and due process. Accordingly, the Settlement is preliminarily approved.

**A. Final Approval Hearing**

The Court will hold a Final Approval Hearing for the following purposes: (a) to determine whether the proposed Settlement, on the terms and conditions provided for in the Settlement, is fair, reasonable, and adequate, and should be approved by the Court; (b) to determine whether an order of Final Judgment should be entered dismissing the Action on the merits and with prejudice; (c) to determine whether the proposed plan of allocation and distribution of the Settlement Fund is fair and reasonable and should be approved; (d) to determine whether the requested award of attorneys' fees and costs should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement. The Court may elect to hold the Final Approval Hearing virtually by Zoom or some other virtual application, and if it does, the instructions on how to attend shall be posted by the Settlement Administrator on the Settlement Website. The Court also reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the Settlement

Website maintained by the Settlement Administrator.

The Court will defer ruling on attorneys' fees and costs until the Final Approval Hearing when considering Class Counsel's Application for Attorneys' Fees and Costs. Plaintiff shall file the Motion for Final Approval no later than 45 days before the initial Final Approval Hearing date. At the Final Approval Hearing, the Court will hear argument from the Parties, and in the Court's discretion, will also hear from any Settlement Class Members (or their counsel) who timely object to the Settlement or to the Application for Attorneys' Fees and Costs.

**B. Appointment of Settlement Administrator**

As agreed by the Parties, the Court appoints Simpluris, Inc. as the Settlement Administrator to supervise and administer the Notice Program and Claims Process, as well as to administer the Settlement should the Court grant Final Approval. All Settlement Administration Costs will be paid out of the Settlement Fund.

**C. Approval of Settlement Class Notice Program and Notice Forms**

The Court approves, as to form and content, the Notice Program, including the Postcard Notice and Long Form Notice, substantially in the forms attached as Exhibits 1-2 to the Agreement. Non-material modifications to these exhibits may be made without further order of the Court. The Settlement Administrator is directed to carry out the Notice Program and to perform all other tasks that the Settlement requires. The date and time of the Final Approval Hearing shall be posted on the Settlement Website and included in the Postcard Notice and Long Form Notice, respectively, before they are emailed, mailed, or published.

**D. Approval of Claim Form and Claim Process**

The Court approves the Claim Form and the Claim Process to be implemented by the Settlement Administrator. The Claim Form, attached to the Agreement as Exhibit 3, is

straightforward and easy to complete, allowing each Settlement Class Member to elect their desired Settlement Class Member Benefits. Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Settlement, including the Claim Form. Should the Court grant Final Approval to the Settlement, Settlement Class Members shall be bound by its terms even if they though do not submit Claims.

The Court directs the Settlement Administrator to disseminate the Notices and Claim Form as approved herein. Class Counsel and Defendant Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this order or the Settlement, including making, without the Court's further approval, minor form or content changes to the Notices and Claim Form they jointly agree are reasonable or necessary.

**E. Opt-Outs from the Settlement Class**

The Notice shall provide that any member of the Settlement Class who wishes to opt-out of the Settlement must request exclusion in writing within the time and manner set forth in the Notice. The Notices shall provide that opt-out requests must be sent to the Settlement Administrator and be postmarked no later than 30 days before the initial date set for the Final Approval Hearing. The opt-out request must be personally signed by the Settlement Class Member and contain the Settlement Class Member's name, postal address, email address (if any), and telephone number; the name of this Action; and a statement that indicates a desire to be excluded from the Settlement Class. The letter can simply say, "I hereby elect to opt out of the Settlement in *Cavallaro-Kearins v. Modernizing Medicine, Inc.*, *Case No: 9:25-cv-81443-EA* class action." If submitted by mail, an opt-out request shall be deemed to have been submitted when posted if

received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an opt-out request shall be deemed to have been submitted on the shipping date reflected on the shipping label.

Any Settlement Class Member who timely and validly opts-out from the Settlement Class shall, provided the Court grants Final Approval: (a) be excluded from the Settlement Class by order of the Court; (b) not be a Settlement Class Member; (c) not be bound by the terms of the Settlement; and (d) have no right to the Settlement Class Member Benefits. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Settlement, including all releases and covenants therein, as well as all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

**F. Objections to the Settlement**

The Notice shall also provide that any Settlement Class Member who does not opt-out from the Settlement Class may object to the Settlement and/or the Application for Attorneys' Fees and Costs. Objections must be filed with the Clerk of the Court and mailed to the Settlement Administrator, Class Counsel, and Defendant's counsel. For an objection to be considered by the Court, the objection must be submitted on behalf of a Settlement Class Member no later than 30 days before the initial date set for the Final Approval Hearing. When submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

For an objection to be considered by the Court, the objection must also set forth:

a. the objector's full name, mailing address, telephone number, and email address (if any);

b. all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c. the number of times the objector has objected to a class action settlement within the five years preceding the date the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d. the identity of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs, and whether they will appear at the Final Approval Hearing;

e. the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years;

f. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

g. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

h. the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel, including taking depositions and propounding document requests, prior to the Final Approval Hearing.

Any Settlement Class Member who opts-out of the Settlement and also objects to the Settlement, regardless of which was submitted first, will be deemed to have opted-out and the objection will be overruled. Any Settlement Class Member who does not make an objection in the manner provided herein shall be deemed to have waived the right to object to any aspect of the Settlement and/or to the Application for Attorneys' Fees and Costs and, if final judgment is entered, shall forever be barred and foreclosed from raising such objections in any proceeding and from challenging or opposing, or seeking to reverse, vacate, or modify, the Final Judgment or any aspect thereof.

**G. Termination of the Settlement and Use of this Preliminary Approval Order**

If the Settlement is not finally approved by the Court, or is terminated, canceled, or fails to become effective for any reason, or the Effective Date does not occur, this order shall become null and void and shall be without prejudice to the rights of Plaintiff, the Settlement Class Members, and Defendant, all of whom shall be restored to their respective positions in the Action as provided in the Agreement. In such event, (i) the Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose other than as necessary to enforce the terms of the Settlement Agreement that survive termination, and (iii) any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement

shall be treated as vacated, *nunc pro tunc.*

This Preliminary Approval Order shall be of no force or effect if the Final Approval Order is not entered and there is no Effective Date, and shall not be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability. Nor shall this Preliminary Approval Order be construed or used as an admission, concession, or declaration by or against the Settlement Class Representative or any other Settlement Class member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claims, including with respect to the certification of a class, they may have in this Action or in any other lawsuit.

**H. Bar from Continued Claims**

Upon the entry of this order, with the exception of Class Counsel, Defendant's Counsel, Defendant, and the Class Representative's implementation of the Settlement and the approval process in this Action, all members of the Settlement Class shall be provisionally enjoined and barred from asserting any claims or continuing any litigation against Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision as to whether to grant Final Approval of the Settlement. The Court also stays and enjoins, pending Final Approval, any actions, lawsuits, or other proceedings brought by Settlement Class Members against Defendant and the other Released Parties arising out of, relating to, or in connection with the Released Claims.

**I. Jurisdiction**

For the benefit of the Settlement Class and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the Settlement proceedings to ensure effectuation thereof in accordance with the Settlement preliminarily approved herein and the related orders of this Court.

**J. Schedule**

The Court hereby sets the following schedule of events in connection with the Settlement's administration and Final Approval Hearing:

| Event | Date |
|---|---|
| **Notice Program Begins** | No later than 20 days after Preliminary Approval |
| **Notice Program Complete** | 45 days before the initial scheduled Final Approval Hearing |
| **Deadline to File Motion for Final Approval and Application for Attorneys' Fees and Costs** | 45 days before the initial scheduled Final Approval Hearing |
| **Opt-Out Deadline** | 30 days before the initial scheduled Final Approval Hearing |
| **Objection Deadline** | 30 days before the initial scheduled Final Approval Hearing |
| **Claim Form Deadline** | 15 days before the initial scheduled Final Approval Hearing |
| **Final Approval Hearing** | **_____________________, 2026, at ______am/pm**<br>(No earlier than 120 days after Preliminary Approval) |

**DONE and ORDERED** in Chambers at West Palm Beach, Florida, this ___ day of ____________, 2026.

HONORABLE ED ARTAU
UNITED STATES DISTRICT JUDGE

# EXHIBIT 5
# (FINAL APPROVAL ORDER)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM DIVISION**

**CASE NO.: 9:25-cv-81443-EA**

PATRICIA CAVALLARO-KEARINS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

MODERNIZING MEDICINE, INC.,

Defendant.

**[PROPOSED] ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS**

**THIS CAUSE** comes before the Court on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs [ECF No. __],[1] filed on _________, 2026, requesting entry of an order: (1) granting Final Approval of the Settlement; (2) certifying the Settlement Class for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) affirming the appointments of the Plaintiff as the Class Representative, Class Counsel, and the Settlement Administrator; (4) awarding attorneys' fees and costs; (5) approving payment of the Settlement Administration Costs; (6) overruling timely objections, if any; and (7) entering final judgment dismissing the Action with prejudice as to the Defendant and reserving jurisdiction over Settlement implementation. The Court held a hearing on the Motion for Final Approval on ___, 2026.

Having already analyzed the Settlement in entering the Preliminary Approval Order [ECF

[1] All capitalized terms have the same meanings as those defined in Section II of the Settlement Agreement attached to the Motion for Final Approval as Exhibit A. *See* [ECF No. ___-1].

No. __ ], and having again carefully reviewed the Motion for Final Approval, the proposed Settlement and its exhibits, all relevant filings, the record, and the argument from the Parties' counsel, the Court finds the Settlement Class should be finally certified, the Settlement satisfies the Final Approval criteria, and the Application for Attorneys' Fees and Costs should be granted. Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

## BACKGROUND

The relevant procedural and factual background of this Action is detailed in the Motion for Final Approval and therefore will not be restated. The Parties have agreed to settle the Action on a classwide basis. The Settlement provides monetary relief that includes a non-reversionary all-cash Settlement Fund of $2,999,750.00. It provides valuable Settlement Class Member Benefits including the ability of Settlement Class Members to submit a claim for two years of Medical Data Monitoring and Cash Payment A – Documented for up to $5,000.00 of documented losses or Cash Payment B – Alternate Payment estimated to be $75.00. The Settlement Fund will be used to pay: (i) all Settlement Class Member Benefits; (ii) any attorneys' fees and costs awarded by the Court to Class Counsel; and (iii) all Settlement Administration Costs.

Plaintiff sought Preliminary Approval of the Settlement on behalf of the proposed Settlement Class. *See* [ECF No. __]. The Court entered the Preliminary Approval Order, [ECF No. __], granting the Motion for Preliminary Approval, conditionally certifying the Settlement Class, finding it was likely to grant Final Approval, and approving a comprehensive Notice Program and Claim Process. Following entry of the Preliminary Approval Order, the Parties and the Settlement Administrator implemented and completed the Notice Program. Motion for Final Approval at __-__. The Claim Form Deadline was ____________, 2026. *Id.*

The Court has jurisdiction over the Action and to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 1332(d) and 1367. Defendant has fully complied with the provisions of the Class Action Fairness Act, 28 U.S.C. § 1715(b).

Having completed the Notice Program, Plaintiff and Class Counsel filed the Motion for Final Approval and Application for Attorneys' Fees and Costs. [ECF No. __]. Only ____ Settlement Class Members have opted-out of the Settlement. Those individuals are identified on the attached ***Exhibit A***. Those Settlement Class Members will not be bound by the Settlement or Releases contained therein. No objections were submitted by Settlement Class Members.

**LEGAL STANDARDS FOR CLASS SETTLEMENT APPROVAL**

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp*., 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id*. (citing *Bennett v. Behring Corp*., 737 F.2d 982 (11th Cir. 1984)). In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e*., all Federal Rule of Civil Procedure 23(a) factors and at least one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See id*. at 672.; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under Rule 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

If certification of a settlement class is appropriate, a court then determines if the proposal

is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether the following factors are met:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id.* Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett*, 737 F.2d at 986). These additional factors are (a) "there was no fraud or collusion in arriving at the settlement," and (b) the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986 ("*Bennett* factors").

Courts have substantial discretion in approving a settlement agreement, *id.*, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual for Compl. Lit., Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (cleaned up).

### A. Final Certification of the Settlement Class and Final Approval Is Warranted.

The Court already determined it was likely to certify the Settlement Class and grant Final Approval of the Settlement in the Preliminary Approval Order. The Court now finds, for settlement purposes only, that it should finally certify the Settlement Class and enter this Final Approval Order because the Settlement Class and proposed Settlement satisfy the Rule 23(a), 23(b)(3), and 23(e) requirements and the *Bennett* factors.

Nothing has changed since the Court granted Preliminary Approval. The Court affirms its findings that the Settlement Class meets the relevant requirements of Rule 23(a) and (b)(3) for only the purposes of the Settlement in that (1) the number of members of the Settlement Class is so numerous that joinder is impracticable; (2) there are questions of law and fact common to the members of the Settlement Class; (3) the claims of the Plaintiff are typical of the claims of the Settlement Class Members; (4) the Plaintiff is an adequate representative for the Settlement Class, and has retained experienced and adequate Class Counsel; (5) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual members of the Settlement Class; and (6) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Plaintiff also has Article III standing. The Court therefore finally certifies the following Settlement Class:

> **Settlement Class**: All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident.
>
> Excluded from the Settlement Class are: (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any member of the Settlement Class that timely and validly opt-outs of the Settlement.

In finding the Settlement fair, reasonable, and adequate, applying the Rule 23(e)(2) and

*Bennett* factors, the Court has also considered that there were no objections to the Settlement, and only __ opt-outs, indicating an overwhelmingly positive reaction from the Settlement Class, and the opinion of competent counsel concerning such matters.

**B. <u>Appointment of Class Representatives and Class Counsel Is Appropriate.</u>**

For the reasons discussed in the Preliminary Approval Order and above, the Court finds that the Plaintiff has adequately represented the Settlement Class Members throughout this Action. The Court therefore designates and appoints Plaintiff as the Class Representative.

Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Federal Rule of Civil Procedure 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

The Court finds Class Counsel have expended a reasonable amount of time, effort, and expense investigating the Data Incident and in litigating this Action. Further, it is clear from their track record of success, as observed by the Court when it appointed them Class Counsel for the Settlement Class, that Class Counsel are highly skilled and knowledgeable concerning class action practice. Therefore, for purposes of the Settlement only, and pursuant to Rule 23(g)(1), the Court appoints Mariya Weekes, Jeff Ostrow, and Raina Borrelli as Class Counsel to act on behalf of the Settlement Class with respect to the Settlement. They are experienced and competent counsel, have adequately protected the interests of the Settlement Class Members, and will continue to do so.

### C. The Notice Program Was Properly Administered.

Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Having consider the results of the Notice Program implementation, the Court now finds the form, content, and method of giving notice to the Settlement Class Members as described in the Notice Program, including the forms of Postcard Notice and Long Form Notice, Settlement Website, Settlement telephone line for frequently asked questions, and Claim Form was (a) the best practicable notice to the Settlement Class Members; (b) reasonably calculated, under the circumstances, to apprise to apprise Settlement Class Members of the pendency of the Action, the terms of the Settlement, the effect of the proposed Settlement (including the Releases contained therein), and their rights under the proposed Settlement, including the right to opt-out of or to object to the proposed Settlement and appear at the Final Approval Hearing; (c) reasonable and constituted due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) written in plain language, using simple terminology, and designed to be readily understandable by Settlement Class Members. Accordingly, the Notice Program satisfied the Rule 23(c)(2)(B) and due process requirements.

Fed. R. Civ. P. 23 (h)(1) further requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice Program satisfied that requirement, as it notified the Settlement Class Members that Class Counsel will apply to the Court for an award of attorneys' fees of up to

one-third of the Settlement Fund, plus reimbursement of costs.

Upon final review, the Court finds the proposed Settlement is fair, reasonable, and adequate; the Settlement Class is certified for Settlement purposes; and the Notice Program satisfied the requirements of Rule 23 and due process. Accordingly, Final Approval is granted.

**ATTORNEYS' FEES AND COSTS AWARD**

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, the Court hereby awards $___________ for attorneys' fees, which is equal to __% of the $2,999,750.00 Settlement Fund, and $___________ for reasonable litigation costs. Class Counsel shall determine the allocation of attorneys' fees to all Plaintiff's counsel.

The requested attorneys' fee award is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974));[2] *see also In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 2675178, at *13 (S.D. Fla. Sept. 17, 2025); *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *11 (S.D. Fla. Feb. 11, 2025). It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to

[2] The factors include: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the clients; and (12) fee awards in similar cases. *Camden I*, 946 F.2d at 772 n.3. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden*, 946 F.2d at 775.

attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Fortra*, 2025 WL 2675178, at *13; *Fortra*, 2025 WL 457896, at *11. The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478).

"As a result, the Supreme Court, the Eleventh Circuit, and courts in this District [including in this MDL] have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *See Fortra*, 2025 WL 2675178, at *13 (citing *Fortra*, 2025 WL 457896, at *12 (quoting *Gevaerts*, 2015 WL 6751061, at *10) (citations omitted)); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Further, "[a]dequate compensation promotes the availability of counsel for aggrieved persons." *Millstein v. Holtz*, No. 21-CV-61179, 2022 WL 18024840, at *8 (S.D. Fla. Dec. 30, 2022) (citation omitted); *Fortra*, 2025 WL 2675178, at *13; *Fortra*, 2025 WL 457896, at *12.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *Fortra*, 2025 WL 2675178, at *14; *Fortra*, 2025 WL 457896, at *12.

The value of monetary and non-monetary relief may be considered in evaluating the attorneys' fee award to class counsel. *Poertner v. Gillette Co*., 618 F. App'x 624, 628 (11th Cir. 2015). "When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *In re: Checking Acct. Overdraft Litig.*, 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190560, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013). When analyzing the value of non-monetary benefits, courts should consider changes to a defendant's business practices. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011) (portion of fee properly allocated to compensation for "non-monetary benefits [counsel] achieved for the class—like companywide policy changes . . .").

The Settlement Class Member Benefits include Medical Data Monitoring, Cash Payments, Security Enhancements, Settlement Administration Costs, and attorneys' fees and costs. But for the Settlement, the Settlement Class would not receive any of these Settlement Class Member Benefits. Class Counsel is directly responsible for delivering the valuable benefits to the Settlement Class.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee

because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litigation*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 774). Here, the attorneys' fee request falls within this accepted range. *See, e.g., Fortra*, 2025 WL 2675178, at *14 (citing *Fortra*, 2025 WL 457896, at *12, and *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 4415214 (S.D. Fla. Oct. 5, 2024) (district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement)). *See also, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding a 35% fee); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (affirming fee award of 33.33 % of settlement).

The litigation costs, comprised of actual out-of-pocket costs Class Counsel reasonably and necessarily incurred and paid in connection with the prosecuting the Action and the Settlement, are reasonable. "Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." *Morgan*, 301 F.Supp.3d at 1258. *See also Fortra*, 2025 WL 2675178, at *14; *Fortra*, 2025 WL 457896, at *12. Further, pursuant to Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. Jan. 8, 1988) (noting plaintiffs' counsel is entitled to reimbursement from the class fund for reasonable expenses).

**RELEASES, ENTRY OF FINAL JUDGMENT, AND RETENTION OF JURISDICTION**

With the exception of those listed on ***Exhibit A***, the Court adjudges that the Class Representative and all Settlement Class Members are bound by this Final Approval Order.

Because the Court approves the Settlement set forth in the Agreement as fair, reasonable, and adequate, the Court authorizes and directs implementation of all terms and provisions of the Agreement, including the payment of Valid Claims, attorneys' fees and costs, and the Settlement Administration Costs.

Judgment shall be, and hereby is, entered dismissing the Action with prejudice, on the merits, and without taxation of costs in favor of or against any Party.

As of the Effective Date, the Releasing Parties hereby fully and irrevocably release and forever discharge the Released Parties of and from the Released Claims. Notwithstanding, the Releases shall not interfere with a Settlement Class Member's right to communicate with a government or law enforcement agency regarding any inquiries involving the Data Incident.

Upon the entry of this Final Approval Order, with the exception of Class Counsel, Defendant's Counsel, Defendant, and the Class Representative's implementation of the Settlement and the approval process in this Action, all Settlement Class Members shall be enjoined and barred from asserting any claims or continuing any litigation against Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims.

Any residual funds remaining in the Settlement Fund 240 days following the date Settlement Class members are sent an email to select their form of payment shall be distributed to the Legal Aid Society of Palm Beach County (https://legalaidpbc.org) as the *cy pres* recipient. The Court finds that its mission matches the goals of this Action to redress and protect privacy rights for consumers.

The Court hereby decrees that neither the Agreement, nor this Final Approval Order, nor the fact of the Settlement, is an admission or concession by Defendant or the Released Parties of any fault, wrongdoing or liability whatsoever, or as an admission of the appropriateness of class certification for trial or dispositive motion practice. This Final Approval Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption, or inference against Defendant or the other Released Parties in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

Without affecting the finality of this Final Approval Order, the Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions from the Settlement Fund; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

In the event the Effective Date of the Settlement Agreement does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement, and this Order shall be vacated. In such event, all orders entered and releases delivered in connection with the Settlement shall be null and void and the Action shall return to its status immediately prior to execution of the Settlement Agreement (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue).

**CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Final Approval, [ECF No. __], is **GRANTED**. This case is **DISMISSED *with prejudice*** with respect to the Defendant herein, and no costs shall be awarded other than specified in this Order or provided by the Settlement Agreement. There being no reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in West Palm Beach, Florida this __ day of ___________, 2026.

______________________________________
HONORABLE ED ARTAU
UNITED STATES DISTRICT JUDGE