**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM DIVISION**

**CASE NO.: 9:25-cv-81443-BER**

PATRICIA CAVALLARO-KEARINS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

MODERNIZING MEDICINE, INC.,

Defendant.

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to Fed. R. Civ. P. 23, Plaintiff[1] files this Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs.[2] The Motion is supported by the Joint Declaration of Interim Co-Lead Class Counsel ("Joint Decl."), attached as ***Exhibit B***, the Declaration of Jacob Kamenir of Simpluris, Inc. ("Admin. Decl."), attached as ***Exhibit C***, and Plaintiff's Declaration ("Pl. Decl.") attached as ***Exhibit D***.

## I. INTRODUCTION

On June 29, 2026, this Court preliminarily approved the Settlement, that provides for substantial Settlement Class Member Benefits including a non-reversionary, all cash $2,999,750.00 Settlement Fund, from which Settlement Class Members may elect to receive Cash Payments and Medical Data Monitoring. The Settlement Fund will be used to pay Settlement Class Member Benefits, all Settlement Administration Costs, and any Court-awarded attorneys' fees and costs. Plaintiff and Class Counsel now move the Court for Final Approval and apply for an award

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as ***Exhibit A***.
[2] Defendant fully supports Preliminary Approval of the Settlement and does not oppose Plaintiff's Motion. By not opposing Plaintiff's Motion, Defendant does not concede the factual basis for any claim and denies liability. The description of the proceedings, as well as legal and factual arguments, are Plaintiff's, and Defendant may disagree with some of those characterizations and descriptions.

of attorneys' fees and costs. The Settlement satisfies all the criteria for Final Approval. Currently, there are no objections and only one of the Settlement Class have opted-out. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## II. PROCEDURAL HISTORY

This Action arises from a Data Incident that Plaintiff alleges compromised the security of her and Class Members' Private Information. Defendant is a medical software firm based in Boca Raton, Florida. In the regular course of its business, Defendant maintains certain Private Information associated with Defendant's Customers' patients, including their names, addresses, dates of birth, phone numbers, email addresses, Social Security numbers, health insurance information, medical information (such as medical record numbers, patient account numbers, dates of service, provider and practice names, billing/diagnostic codes, prescription/medication information, and diagnosis and treatment information). Agreement ¶¶ 1, 51.

On July 21, 2025, Defendant detected suspicious activity on two computer servers that were used to facilitate the conversion of limited data from retiring electronic health record ("EHR") platforms to Defendant's current EHR platform. *Id.* ¶ 2. It subsequently determined an unauthorized actor had accessed and acquired information stored on those servers between July 9, 2025, and July 10, 2025. *Id.* On or about October 17, 2025, Defendant began sending notice letters to impacted individuals advising them their Private Information may have been impacted in the Data Incident. *Id.* ¶ 3. There are 371,652 Settlement Class Members. Admin. Decl. ¶ 3.

On November 19, 2025, Plaintiff Cavallaro-Kearins filed a class action lawsuit seeking to represent a putative class of individuals whose Private Information was involved in the Data Incident and alleging claims for negligence, breach of implied contact, invasion of privacy, unjust enrichment, and breach of fiduciary duty. ECF No. 1; Agreement ¶ 4. Defendant waived service of process on December 19, 2025. ECF No. 5; Agreement ¶ 5.

The Parties decided to conserve resources and explore resolution of the entire Action. Joint Decl. ¶ 6. The Parties set a mediation in Miami, Florida with experienced class action mediator Bruce Friedman, Esq. with JAMS for April 2, 2026. *Id.* On February 5, 2026, the Parties filed a

Joint Motion to Stay Proceedings Pending Mediation, which the Court granted on February 18, 2026. ECF Nos. 8, 11.

Before mediation, Plaintiff requested and Defendant produced informal discovery requests related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident and the categories of Private Information involved. Likewise, Defendant requested and Plaintiff produced informal discovery related to her claims, including, but not limited to, information about the injuries alleged in her Complaint. The Parties exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, and settlement. Agreement ¶ 8; Joint Decl. ¶ 7.

After a full day of negotiations on April 2, 2026, the Parties agreed to the material Settlement terms on a classwide basis. Agreement ¶ 9*,* Joint Decl. ¶ 9. The Parties filed a Notice of Settlement and Joint Motion to Stay on April 3, 2026, which the Court granted on April 6, 2026. ECF No. 12-13; Joint Decl. ¶ 10. Over the next seven weeks, the Parties worked diligently to finalize the terms of the Agreement, Notices, Claim Form, and proposed orders. Joint Decl. ¶ 10. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id.* ¶ 13. The Agreement was executed on May 22, 2026. *Id*. ¶ 10.

Plaintiff filed her Motion for Preliminary Approval on May 26, 2026, and following a hearing the Court entered the Preliminary Approval Order on June 29, 2026. *Id.* ¶ 15. The Notice Program has been completed in compliance with the Agreement and the Preliminary Approval Order, and the Claims Process is ongoing. *See generally* Admin. Decl.

## III. MATERIAL SETTLEMENT TERMS

**A. Settlement Class** – Plaintiff seeks Preliminary Approval of the following Settlement Class:

> [A]ll living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information was impacted in the Data Incident.

The Settlement Class excludes: (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any member of the Settlement Class that timely and validly opt-outs of the Settlement. Agreement ¶ 61.

**B. Settlement Fund –** The Settlement provides for a non-reversionary $2,999,750.00

all cash Settlement Fund that Defendant has funded. *Id.* ¶¶ 64, 67. It will pay: (1) all Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees and costs awarded by the Court. *Id.* ¶ 68.

**C. Settlement Class Member Benefits –** When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. *Id.* ¶ 71. They may also elect to receive Medical Data Monitoring. *Id.* All Cash Payments will be subject to a *pro rata* increase or decrease, depending on the value of all Valid Claims. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Settlement Class Member Benefit. *Id.*

***Cash Payments* –** Settlement Class Members who elect Cash Payment A may receive up to $5,000.00 for reasonable documented losses related to the Data Incident. *Id.* ¶ 71.a. Alternatively, they may elect to Cash Payment B in the estimated amount of $75.00. *Id.* ¶ 71.b.

***Medical Data Monitoring* –** Settlement Class Members may also make a Claim for Medical Data Monitoring that will include two years of CyEx's Medical Shield and: (i) real time monitoring of the credit file with one credit bureau; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freezing assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 71.c.

**D. Releases –** Plaintiff and Settlement Class Members who do not timely and validly opt-out of the Settlement will be bound by the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *Id.* § XIII. The Released Claims are narrowly tailored and are only claims arising out of or relating to the Data Incident. Joint Decl. ¶ 15.

**E. Attorneys' Fees and Costs –** Plaintiff requests an attorneys' fee award of $999,916.66, one-third of the Settlement Fund, and $17,994.40 for reimbursement of costs. Joint Dec. ¶ 36. The Notices advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement Class Member has objected to the amount requested. *Id.* ¶ 43. The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. Agreement ¶ 103.

## IV. SUMMARY OF NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OBJECTIONS

**A. Notice Program**. The Settlement Administrator sent the CAFA Notices required by 28

U.S.C. § 1715. Admin. Decl. ¶ 6. The Settlement Administrator implemented the Notice Program, consisting of the Postcard Notice, Long Form Notice, Settlement Website, and Settlement telephone number. *Id.* ¶¶ 7-17. The Postcard Notices clearly and concisely summarized the Settlement and the Settlement Class's legal rights, and directed the Settlement Class to visit the Settlement Website for additional information. *Id*. ¶¶ 11 and Ex. 1 thereto.

The Settlement Administrator's Declaration details the Notice process. *Id*. ¶¶ 7-17, 25-26. Settlement Class Members were sent Postcard Notices by mail. *Id.* ¶ 11. Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information or to better addresses that were found using a third-party address lookup service. *Id.* ¶ 12. As of October 1, 2026, individual notice efforts have reached approximately 95.22% of the identified Settlement Class. *Id.* ¶ 14.

Additionally, a Long Form Notice and Claim Form are available on the Settlement Website or by mail on request to the Settlement Administrator via the toll-free telephone number or other means. *Id.* ¶ 14, Ex. 3-4.

On July 28, 2026, the Settlement Administrator established a dedicated Settlement Website (https://www.modernizingmedicinedatasettlement.com) for the Settlement Class to obtain detailed information about the Action and the Settlement and review important documents, including the Complaint, Long Form Notice, Settlement Agreement, and Claim Form. *Id.* ¶ 15. This Motion for Final Approval will be posted upon filing. The Settlement Website also includes relevant dates, answers to frequently asked questions, opt-out and objection instructions, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* As of October 1, 2026, there have been 9,174 unique visits to the Settlement Website, and 32,190 web pages have been presented. *Id.*

Also, on July 29, 2026, the Settlement Administrator established a toll-free telephone number for Settlement Class members to call for Settlement information and/or to request a Long Form Notice and Claim Form. *Id.* ¶ 16. As of October 1, 2026, there have been 341 calls to the toll-free telephone number. *Id.*

A postal mailing address was established and is available to contact the Settlement Administrator to request additional information or ask questions. *Id.* ¶ 17.

**B. Claim Process.** The timing of the Claim Process was structured to ensure that all Settlement Class Members had adequate time to review the Settlement terms, decide whether to

submit a Claim, opt-out, or object to the Settlement, compile documents supporting their Claims, and submit Claims for Settlement Class Member Benefits. Joint Decl. ¶ 44. Settlement Class Members may continue to submit Claim Forms online or by mail prior to the Claim Form Deadline. Cash Payments will be made by electronic payment, and an email will be sent to Settlement Class Members electing Medical Monitoring with activation instructions. Agreement ¶¶ 97, 99.

The Claim Form Deadline is November 2, 2026. Admin. Decl. ¶ 18. As of October 1, 2026, the Settlement Administrator has received 7,715 Claim Forms). *Id.* ¶ 17. These numbers are preliminary. *Id.* Claim Forms are still subject to final audits, including full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

**C. Opt-Outs and Objections.** The Objection and Opt-Out Periods end on October 19, 2026. *Id.* ¶¶ 20, 22. As of October 1, 2026, the Settlement Administrator has received only one opt-out request. *Id.* ¶ 21. The Settlement Administrator and Parties are not aware of any objections. *Id.* ¶ 23; Joint Decl. ¶ 44.

## V. ARGUMENT

### A. The Settlement Class Should Be Certified.

The Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Rule 23(a) and (b)(3). In compliance with Rule 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met: ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. [ECF No. 16 at 11–16]. Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified. Therefore, for brevity's sake, Plaintiff does not repeat her arguments in support of Settlement Class certification and instead incorporates her arguments from the Motion for Preliminary Approval by reference. [ECF No. 16 at 9–16].

At the Preliminary Approval Hearing, the Court asked for additional information concerning Plaintiff's Article III standing. Plaintiff therefore addresses standing below and submits her Declaration, attached as ***Exhibit D***, in further support of her standing to pursue the claims at issue. To establish standing, a plaintiff must demonstrate she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman*, 221 F.3d at 1279). Article III standing need not be proved with evidentiary support at the settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021); *Cravens v. Garda CL Se., Inc.*, No. 9:24-CV-80400-BER, 2025 U.S. Dist. LEXIS 178343, at *20 (S.D. Fla. Sept. 11, 2025) (Reinhart, J.).

"Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach." *Garda*, 2025 U.S. Dist. LEXIS 178343, at *20 (citing *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *7 (S.D. Fla. Feb. 11, 2025); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022)). *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-1208 (S.D. Fla. 2022), extensively addressed standing in data breach class actions, when it is alleged that personal information obtained in a data breach is posted on the dark web, and subsequently relied on that analysis when preliminarily approving a class settlement in that case. *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 n.2 (S.D. Fla. Apr. 10, 2024) (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023)). *See also In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 4547212, at *3-7 (S.D. Fla. Feb. 11, 2025) (denying motion to dismiss for lack of standing because plaintiffs alleged their personal information was posted by hackers on the dark web, which is the misuse required for standing (citing *Green-Cooper*).

Here, Plaintiff has suffered a concrete injury in fact. This is not a case involving the possibility that an unauthorized party could have accessed Plaintiff's Private Information. Defendant acknowledged an unauthorized third party was able to "see and *take copies* of some information" contained on the affected servers during the Data Incident. Compl. ¶ 19 (emphasis added). Following the Data Incident, Plaintiff was alerted that her email address, home address, Social Security number, and telephone number were found on the dark web, all of which falls within the Private Information taken in the Data Incident and which Plaintiff states she provided to Defendant. *See* Pl. Decl. ¶¶ 4, 11. Plaintiff spent time and effort responding to the Data Incident,

reviewing her credit and financial accounts for any misuse or fraudulent activity, enrolled in a paid credit monitoring service, and froze her credit to mitigate the risk of harm. *Id.* ¶¶ 7-8. She also experienced an increase in spam phone calls and text messages. *Id.* ¶ 10. The Eleventh Circuit has found similar allegations regarding the posting of personal information on the dark web to be misuse and held that it "establishes both a present injury … and a substantial risk of future injury" sufficient to establish Article III standing. *Green-Cooper*, 73 F.4th at 889–90. Courts within the Eleventh Circuit have found similar injuries to be sufficient for standing purposes even where, unlike here, they are allegations without evidentiary support. *See, e.g.*, *Conner v. CPAP Med. Supplies & Servs.*, No. 3:25-cv-945-WWB-LLL, 2026 U.S. Dist. LEXIS 118555, at *11 (M.D. Fla. May 29, 2026); *Crowe v. Managed Care of N. Am. Inc.*, No. 23-61065-CIV-SINGHAL, 2024 U.S. Dist. LEXIS 249026, at *30 (S.D. Fla. Aug. 16, 2024); *In re Lakeview Loan Servicing Data Breach Litig.*, No. 1:22-CV-20955-GAYLES/TORRES, 2023 U.S. Dist. LEXIS 224865, at *23 (S.D. Fla. Dec. 15, 2023).

Because Plaintiff and Settlement Class Members had their Private Information impacted in the Data Incident, they all suffered an injury in fact, that is fairly traceable to the Data Incident, and which could be redressed through an appropriate damages award if this case was litigated through trial. As in *Garda*, *Forta*, *Mednax*, and *Desue*, the pursuit of damages and injunctive relief based on actual misuse and actual access to the Settlement Class's data is a plausible injury in fact – the substantial risk of future harm from identity theft and emotional injury; the diminution in the value of their Private Information; and the loss of privacy. *Garda*, 2025 U.S. Dist. LEXIS 178343, at *20-21; *Fortra*, 2025 WL 457896, at *7 (citing *Mednax*, 603 F. Supp. 3d at 1202-05).

The causal connection between the Data Incident and the Settlement Class's injuries, or traceability to the Data Incident, exists for Article III standing. The injuries must be "fairly traceable" to Defendant's actions, but that does not mean Plaintiff is required to show proximate cause because harm flowing indirectly from the Data Incident are sufficient for standing. *Fortra*, 2024 WL 4547212, at *6-7; *Mednax*, 603 F. Supp. 3d at 1205. Defendant's actions need not be the very last step in causation chain. *Mednax*, 603 F. Supp. 3d at 1205. Defendant's alleged failure to protect the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiff's allegations of economic losses, lost time, and emotional distress, and Settlement Class Members are at substantial risk of future identity theft incidents. *See In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 2675178, at *9 (S.D.

Fla. Sept. 17, 2025) (citing *Fortra*, 2025 WL 457896, at *7, and *Mednax*, 603 F. Supp. 3d at 1206). The Data Incident need not have provided all information necessary to inflict those harms; it is enough the Data Incident could assist give identity thieves in perpetrating them. *See id.* (citing *Fortra*, 2025 WL 457896, at *7, and *Mednax*, 603 F. Supp. 3d at 1206).

Plaintiff's appointment as the Class Representatives should be affirmed as she remains an adequate representative. For the same reasons the Court found her adequate under Rule 23(a)(4), the Court should also affirm the appointment of Jeff Ostrow, Mariya Weekes, and Raina Borrelli as Class Counsel. Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Joint Decl. ¶ 19. Before commencing litigation, they investigated the claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. *Id.* ¶ 4. Class Counsel have devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶ 20.

Finally, the Court should reaffirm its appointment of Simpluris as the Settlement Administrator.

**B. The Settlement Should be Finally Approved.**

The Preliminary Approval Order found the Court would be likely to finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) and the "*Bennett*" factors. [ECF No. 26]. Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class's positive reaction to the Settlement with no objections and 7,715 Claims to date (the Claim Form Deadline is not until November 2, 2026). Admin. Decl. ¶¶ 18, 23.

The Rule 23(e)(2) factors are as follows:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

***Adequacy of Representation (Rule 23(e)(2)(A))*****:** This first factor "weighs heavily in favor of granting Final Approval because both Class Counsel and the Class Representative have adequately represented the Class." *Garda*, 2025 U.S. Dist. LEXIS 178343, at *22 (citing *Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329, at *6). While litigation in *Mednax* proceeded to a later stage than here before the parties agreed to settlement, Class Counsel, who were also lead counsel in *Garda* and *Fortra* and efficiently settled that case early, thoroughly investigated and analyzed Plaintiffs' claims. Joint Decl. ¶ 11. Class Counsel also consulted data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *Id.* ¶ 20; *Mednax*, 2024 WL 1554329 at *6. Class Counsel used informal discovery to learn pertinent facts including what caused the Data Incident and the Private Information impacted in the Data Incident, before attending a full-day mediation session. Joint Decl. ¶¶ 7-8. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *Id.* ¶ 19.

Also, the Class Representative has demonstrated her adequacy by (a) having a genuine personal interest in the outcome of the case; (b) selecting well-qualified Class Counsel; (c) producing information and documents to Class Counsel to permit investigation and development of the complaints; (d) being available as needed throughout the litigation; and (e) monitoring the Action. *Id*. ¶ 35. Class Representative's interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 33. The Class Representative has the same interests in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id.*

***Settlement Negotiated at Arm's Length (Rule 23(e)(2)(B) and Bennett Factors 5–6)*****:** The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of mediator, Bruce Friedman. *Id.* ¶¶ 9, 14. *See also Garda*, 2025 U.S. Dist. LEXIS 178343, at *22 (citing *Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329, at *6). Though the Settlement was reached at any early stage, the record reflects that this Action has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶ 11. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.*; *see also, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case and engaged in full-day mediation).

Currently there is no opposition to the Settlement and only one opt-out. Class Counsel will respond to objections before the Final Approval Hearing if any are submitted.

***Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and Bennett Factors 1–4)*****:** Although Plaintiffs believe the claims asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued, complex, and expensive litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. "'[D]ata breach class actions are risky cases." *Garda*, 2025 U.S. Dist. LEXIS 178343, at *23 (quoting *Fortra*, 2025 WL 457896, at *9; and citing *Mednax*, 2024 WL 1554329, at *7). The Settlement's fairness is underscored by the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Id.* Given those risks, the Settlement provides outstanding benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare").

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, courts must also examine the range of possible damages the plaintiffs could recover at trial and combine this with an analysis of the plaintiffs' likely success at trial to determine if the settlements fall within

the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate"). Here, Settlement Class Members may elect Cash Payment A for reasonable documented losses up to $5,000.00, or they may elect Cash Payment B for an estimated $75.00 flat cash payment. Agreement ¶ 71. Also, Settlement Class Members may elect Medical Data Monitoring. *Id.*

The Settlement's value to the Settlement Class is guaranteed, but the chances of prevailing on the merits are very uncertain. *Id.* ¶ 28. While Plaintiff and Class Counsel strongly believe in the merits of their case, they also recognize Defendants assert a number of potentially case-dispositive defenses. *Id.* Should litigation continue, Plaintiff would have to defeat a motion to dismiss, following which they would have to win a motion for class certification and survive a motion for summary judgment. *Id.* ¶ 29. Attributable in part to their cutting-edge nature and the rapidly evolving law, data breach cases including this one generally face substantial hurdles, even to survive the pleading stage. *See, e.g.*, *Logan v. Marker Group, Inc.*, No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim); *Dougherty, et al. v. Bojangles Restaurants, Inc.*, No. 25-CV-00065, ECF No. 34 (W.D.N.C. Sep. 30, 2025) (dismissing case in its entirety at the pleadings stage). *See also In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) (legal issues involved in data breach litigation "are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues"); *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *Maldini v. Marriott Int'l*, 140 F.4th 123 (4th Cir. 2005); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. 2023); *Theus v. Brinker, Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025). Moreover, because of the quickly evolving nature of case law pertaining to data protection issues, it is likely a win by any party will result in interlocutory and final appeals, further increasing costs and extending the time until Plaintiff and putative class members can have a chance at relief. Joint Decl. ¶ 29.

Also, the Claim Process and distribution of Settlement Class Member Benefits is fair,

convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic payment, along with Credit Monitoring if elected. Agreement ¶¶ 97, 99; Joint Decl. ¶ 45. The Settlement Administrator is highly qualified to manage the entire process. Joint Decl. ¶ 45. "'Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.'" *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7).

Finally, the Parties' agreements are all set forth in the Agreement. Joint Decl. ¶ 10.

***Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))*:** As the court found in *Garda*, 2025 U.S. Dist. LEXIS 178343, at *25; *Fortra*, 2025 WL 457896, at *9, and *Mednax*, 2024 WL 1554329 at *7, all Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits. Thus, "'[t]he method of distributing the settlement benefits will be equitable and effective.'" *Garda*, 2025 U.S. Dist. LEXIS 178343, at *25 (quoting *Fortra*, 2025 WL 457896, at *9; *Mednax*, 2024 WL 1554329 at *7). Further, the attorneys' fees do not impact the other terms of the Agreement, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms. Agreement ¶ 103. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee and costs award. *Id.*

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

### C. Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.

The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. The Settlement Class received Notice of the Settlement and members have the opportunity to be heard and participate in the Action. *See* Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). This Court exercised its discretion to approve a reasonable Notice Program in the Preliminary Approval Order, with the Postcard Notice and Long Form Notice being the best notice practicable under the circumstances and constituting due and sufficient notice of the Settlement to all Class Members. [ECF No. 26].

The Notices included, among other information: a description of the material terms of the

Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Admin. Decl. ¶ 15 The Notice Program also included a toll-free number to ask Settlement-related questions and the Settlement Website containing relevant Settlement Information. *Id.* ¶ 16. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. Admin. Decl. ¶ 26.

### D. The Settlement Administration Costs Are Reasonable.

The Settlement Administration Costs total $335,713.00, a substantial portion of which have already been incurred for the Notice Program, and the remaining portion of which will be incurred for Claim processing and payments following Final Approval, along with other Settlement Administration services outlined in the Settlement Agreement. Admin. Decl. ¶ 24. These costs are required to complete the Settlement. *Id.*

### E. Application for Attorneys' Fees and Costs

Pursuant to the Settlement and Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $999,916.66 which is equal to one-third of the $2,999,750.00 Settlement Fund, and $17,994.40 to reimburse them for litigation costs. *Id.* ¶ 37. The requested attorneys' fee award is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

#### 1. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs: it "serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted).

"The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478). "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Id.* (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund" – though "an upper limit of 50 percent of the fund may be stated as a general rule." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the case). Class Counsel's fee request falls within this accepted range.

**2. Application of the *Camden I* Factors Supports the Requested Fee.**

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1) the time and labor required;
(2) the novelty and difficulty of the relevant questions;
(3) the skill required to properly carry out the legal services;
(4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the clients or the circumstances;
(8) the results obtained, including the amount recovered for the clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the clients; and
(12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.[3] These twelve factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

***a. The Claims Against Defendant Required Substantial Time and Labor.***

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Joint Decl. ¶ 40. The organization of Class Counsel ensured the work was coordinated to maximize efficiency and minimize duplication of effort. *Id*. Class Counsel devoted substantial time to investigating the claims. *Id.* Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and resources were also dedicated to working with experts, exchanging informal discovery, and preparing for and attending a successful mediation. *Id.* Significant time was then devoted to negotiating and drafting the Settlement Agreement, the Preliminary Approval process, and to all actions required thereafter by the Agreement and the Preliminary Approval Order. *Id*. Class Counsel has spent substantial time leading up to this Motion for Final Approval, addressing the Notice Program, Claim Process, and preparing this filing. *Id.* Time will also be spent preparing for and attending the Final Approval

[3] The seventh and eleventh factors are relatively neutral, though it important to Class Counsel to efficiently obtain the Settlement benefits for the Settlement Class impacted by the Data Incident.

Hearing. *Id.* Finally, should Final Approval be granted, Class Counsel will devote substantial time to Settlement administration to ensure Valid Claims are paid and the Settlement is fully implemented. *Id.*

Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* ¶ 41. Each of the above-described efforts was essential to the Settlement. *Id.* Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested attorneys' fee. *Id.*

***b. The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel.***

This Court has witnessed the quality of Class Counsel's legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. *Id.* ¶ 42. This factor weighs heavily in support of the requested attorneys' fee award. In fact, courts routinely recognize the novelty and difficulty of the questions present in a case as a "significant factor to be considered in making a fee award." *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. l:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (recognizing that "[data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex.").

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3. Defendant's Counsel are from a national recognized firm and are extremely capable class action litigators, making them worthily, highly competent adversaries. Joint Decl. ¶ 25; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

***c. Class Counsel Achieved a Successful Result.***

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result, with $2,999,750.00 recovered for the Settlement Class, affording them meaningful Settlement Class Member Benefits designed to meet the typical repercussions faced by consumers following a data breach. Joint Decl. ¶ 23. The risk involved is emphasized by the

fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification); *FultonGreen,* 2019 WL 4677954 at *8 (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 29. Considering Defendant has compelling defenses, continuing to pursue this case posed a significant risk for Plaintiffs and the Settlement Class. *Id.* Therefore, Class Counsel's risks weigh in favor of Class Counsel's requested fee.

***d. Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis and Lost Opportunity for Other Employment.***

In undertaking to prosecute this case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment, while foregoing the opportunity to work on other cases. *Id.* ¶¶ 37-39. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)).

Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the costs they have advanced. Joint Decl. ¶¶ 37, 40. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested attorneys' fee:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548; Joint Decl. ¶ 39.

***e. The Requested Fee Comports with Fee Awards in Similar Cases.***

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the Eleventh Circuit and in the Southern District of Florida. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 4415214, at *5 (S.D. Fla.

Oct. 5, 2024) (noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement). *See also, e.g.*, *Garda*, 2025 U.S. Dist. LEXIS 178343, at *25 (awarding one-third); *Fortra*, 2025 WL 457896, at *11-12 (same); *In re Indep. Living Sys. Data Breach Litig.*, No. 1:23-cv-21060m ECF No. 106) (S.D. Fla. Nov. 24, 2025 (awarding one-third); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding 35%); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).

Examples of attorneys' fee awards of one-third or higher in data breach cases include the two *Fortra* MDL, *Indep. Living*, and *Garda* settlements cited in the prior paragraph and the following: *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-MD-3126-BMM, 2025 U.S. Dist. LEXIS 211590 (D. Mont. Oct. 23, 2025) (approving 33.33% of the Advance Auto Parts settlement fund); *In re Snowflake, Inc., Data Sec. Breach Litig.*, No. 2:24-MD-3126-BMM, 2025 U.S. Dist. LEXIS 211498 (D. Mont. Oct. 23, 2025) (approving 33.33% of the Neiman Marcus settlement fund); *Gambino, et al. v. Berry Dunn McNeil & Parker, LLC, et al.*, No. 2:24-cv-00146-JAW (D. Maine) (approving 33.33% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), DE# 48 (approving 33.33% of the settlement fund); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (approving one-third of the settlement fund); *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, DE# 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), DE# 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *In re Lincare Holdings Inc. Data Breach Litig.*, 2024 WL 3104286, at *3 (same); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, DE# 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, DE# 47 (E.D. Ky. Oct. 25, 2023) (same); *Kostka*, 2023 WL 3914266, at *3 (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-

000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same).

Class Counsel's request is also reasonable considering the market rate in the private marketplace "where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id.* Indeed, this Court has recognized a fee of one-third "is at the market rate of what the Class could have negotiated with counsel . . . as a traditional contingency fee arrangement at the outset of the case." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016); *see also In re Checking Account Overdraft Litig.,* 830 F.Supp.2d 1330, 1366 (S.D. Fla. 2011) (acknowledging class counsel's requested fee of 30% "falls on the low end of the average in the private marketplace" where contingency fees of up to 40% are customary in the private marketplace).

**3. The Litigation Costs Are Reasonable.**

Class Counsel request reimbursement of $17,994.40 for litigation costs that Class Counsel incurred and paid in connection with the prosecution of the Action and the Settlement. The costs include fees related to filing, service of process, pro hac vice applications, experts, and mediation. Joint Decl. ¶ 37. Ordinary law firm overhead costs, including postage and legal research, are not included. Plaintiffs' attorneys are entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefited the class. *Morgan*, 301 F. Supp. 3d at 1258. Further, pursuant to Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens*, 118 F.R.D. at 549 (noting plaintiffs' counsel is entitled to be reimbursed from the class fund for reasonable expenses incurred).

## VI. CONCLUSION

Plaintiff and Class Counsel respectfully request this Court enter an Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiff as Class Representative; (4) confirming the appointments of Jeff Ostrow, Mariya Weekes, and Raina Borrelli of Strauss Borrelli PLLC as Class Counsel; (5) awarding Class Counsel $999,916.66 for attorneys' fees and $17,994.40 for litigation costs; (6) approving payment of the Settlement Administration Costs; (7) overruling timely objections, if any; and (8) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit E***.

## CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL

Plaintiff's counsel certifies that Plaintiff has conferred with Defendant regarding the relief requested herein and Defendant does not oppose the relief requested.

Dated: October 2, 2026

Respectfully submitted,

/s/ *Jeff Ostrow*
Jeff Ostrow FBN 121452
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel : (954) 332-4200
Fax: (954) 525-4300
ostrow@kolawyers.com

Mariya Weekes (Fla. Bar 56299)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL, 33131
Tel: (786) 206-9057
Fax: (786) 879-7520
Email: mweekes@milberg.com

Raina C. Borrelli (pro hac vice)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Tel: (872) 263-1100
Fax: (872) 263-1109
raina@straussborrelli.com

*Counsel for Plaintiff and Proposed Class*